James Edward **PETERS**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 28, 1966.

Rehearing Denied July 1, 1966.

Ray C. Lewis, Lewis & Weaver, London, for appellant.

Robert Matthews, Atty. Gen., Harold T. Hotopp, Asst. Atty. Gen., Frankfort, for appellee.

STEWART, Judge.

James Edward Peters appeals from a judgment sentencing him to five years' imprisonment in the state penitentiary for feloniously breaking into and entering a dwelling house with the intent to steal. Appellant contends the trial court erred in refusing to instruct the jury to find him not guilty at the close of the evidence for the Commonwealth and at the conclusion of all the evidence.

Grant Reed, Jr., testified he is a school teacher at Lily High School in Laurel County and lives with his wife and daughter about five miles southeast of London. The Reed residence is located on a private road about 1000 feet off the main highway. On April 18, 1965, around 7:45 p. m., while it was still daylight, he and his family left their home to visit a friend who lives in London. They returned around 8:45 p. m.; by this time it had become dark. As they turned off the main highway Reed and his wife saw a car with one occupant, parked on the private road. Neither the automobile nor the person driving it was familiar to either of them. As they approached the driver started his car and continued on the

private road toward Reed's farm which lies in back of his house. The Reeds decided not to pursue the car but instead turned left onto another private lane which leads to their home.

As they drew near the house they noticed the doors of their truck were open. Upon closer examination Reed saw his school supplies and work clothes on the front seat of the truck had been searched. After entering the house, they found that close to the front door the sectional pane of a large picture window had been broken out; that the drapes by the window had been torn from the wall and were lying on the floor; and that the window screen had been pushed through and was lying on the floor with the front door mat on top of it. They later observed there was some blood on the drapes.

Reed called the Kentucky State Police to report the break-in. He and his wife decided to drive out to the main highway to meet the trooper since their home is hard to see from where the turn is made off the highway onto the private road. En route they saw a car go out the private road and turn its lights off. They recognized it as the same car they had noted shortly before at the time they came home. There was one person in the car when the Reeds first saw it; there were two in it when they saw it the second time. The Reeds gave chase and were able to obtain the license number of the car, which they furnished to the Kentucky State Police.

State trooper James Herrell traced the license number and this resulted in the arrest of appellant, James Edward Peters, at his home in North Corbin somewhere around 10 p. m. on Easter Sunday. Reed saw appellant at the Kentucky State Police barracks at about midnight, at which time appellant told him he broke into his house. Reed noticed appellant's hand was cut. Also appellant told Reed that Roy Baker was driving the car.

Appellant and Reed both stated there had been no previous trouble between them and that they were boyhood playmates.

Appellant testified that after finishing work on Saturday night, April 17, 1965, he drove his automobile from Mt. Vernon to his home in Corbin. Earlier that week he had purchased in Richmond a fifth and three pints of whisky, a fifth of gin, and approximately three cases of beer. On his trip home from Richmond he consumed an unspecified amount of this liquor but, after arriving there, did not drink any more until about 8:30 a. m. the next day, which was Easter Sunday. At or about 1 p. m. appellant met Roy Baker and during the remainder of the afternoon they rode around in an automobile driven by appellant, each partaking liberally of the liquor appellant had previously purchased.

Both appellant and Baker testified they got very drunk and could not remember much of what happened until they were arrested later that night at their respective homes. Baker stated that the last thing he could remember before he passed out was sitting in the car with appellant out on the private road sometime before dark.

Appellant's first contention is that the trial court committed error in permitting the following statement signed by appellant to be read to the jury:

"My name is James E. Peters, and 27 years of age, and can read and write, and I know Jim Herrell to be a Trooper with the Kentucky State Police, and have been advised of my rights to an attorney, and hereby give a statement of my own free will, this 18th day of April, 1965."

\*     \*     \*     \*     \*     \*

"I got off from work Saturday, April 17th, 1965, at the Big B. Market at Mount Vernon about 7:30 p. m. and drove to Corbin. When I got home I took my wife and daughter to my mother's home in Lily. We arrived back home about midnight. And on

Sunday, April 18th, I got up about 8:30 a. m. and again went to mom's. From here, my wife and daughter went to church and I left mom's and drove around with some fellows until about 12:30 or 1:00 o'clock. Then I went—left mom's and went and picked up Roy Baker and went to Noe's Dock. The water was too muddy to fish so we came back to Lily and drove around and drank quite a bit. Some time around dark, we were on the Old Whitley Road and for some reason, I can't explain, I went to the house belonging to Grant Reed, Jr., as told to me by Roy Baker. At Reed's home I knocked out a window, I don't remember if I went in the house or not, but I cut my hand on the glass. When I cut my hand I turned and ran to the car. I don't even know why I went to Junior's house. Roy was driving the car and was there in the car when I went to the house, and when I got back to the car Roy was in the car. I think I then took Roy home and I went home. I am not sure how Roy got home. I must of taken him home first and then I went on home. When I got home I told my wife I had done wrong, that I broke into somebody's home and I was going to give myself up. My wife kept me in the house because I was too drunk to drive. It wasn't very long until you came to the house and got me.

"I have read the statement consisting of three pages and it's true and correct to the best of my knowledge.

"James E. Peters"

Appellant contends it was error for the trial court to permit the above writing to be read to the jury over his objection. This contention is based on the grounds that: (1) Appellant was intoxicated when the statement was obtained; and (2) the statement was taken while he was without counsel.

Trooper Herrell, who obtained the statement from appellant, testified, at midnight when appellant gave it, he "was coming out of his intoxication and beginning to sober up." When asked what appellant's condition was at that same time on April 18, 1965, Reed said, "I would say that he had had something to drink." Appellant stated that he had had so much to drink that, "I just barely do remember making the statement to him. I was kind of getting a little revived."

Without conceding that appellant was intoxicated on the occasion in question, appellee maintains the statement was admissible whether he was or not in a drunken state when it was taken. In support of its position on this point appellee relies upon this language which appears in Wharton's Criminal Evidence, Vol. 2, p. 122:

"A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confesser was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury."

It is stated in an annotation to State v. Isom, 243 N.C. 164, 90 S.E.2d 237, 69 A.L.R. 2d 358, that this rule is supported by a majority of the jurisdictions, although no Kentucky decision is cited in this connection. On page 362 of 69 A.L.R.2d the majority rule is thus stated:

"The case law on the subject under annotation may be summarized briefly: proof that the accused was intoxicated at the time he confessed his guilt of crime will not, without more, bar the reception of the confession in evidence. But if it is shown that the accused was intoxicated to the degree of mania, or of being unable to understand the meaning of his statements, then the confession is inadmissible."

Appellant, according to his confession, remembered going to the residence of Reed. He recalled knocking out a window and cutting his hand on the broken glass. He was not so drunk he was unable

to drive his friend Baker home and afterwards drive himself home without incident. Nor was he so intoxicated when he got home that he was robbed of the knowledge that he "had done wrong," because he told his wife: "I broke into somebody's house." The confession on its face shows he was not benumbed to a degree that he could not give a complete and intelligent narration of all the details that occurred before, during and after the break-in. He was, furthermore, sober enough to resort to stealth in his effort to escape from the scene of the crime without detection.

■ The fact that a person is intoxicated does not necessarily disable him from comprehending the intent of his admissions or from giving a true account of the occurrences to which they have reference. There is nothing in the record to indicate that because of his intoxication appellant was in a maniacal state. It is our view, too, that the jury could reasonably conclude appellant was not so intoxicated as to be unconscious of the meaning and effect of the words contained in his statement.

■ The trial court did not abuse its discretion in admitting in evidence the confession under the facts presented. The break-in occurred between 7:45 p. m. and 8:45 p. m. Appellant's statement was made and signed around midnight, after he had been arrested at 10 p. m. There is no evidence whatsoever that appellant was coerced, abused, mistreated, threatened, or subjected to any undue influence by any one, prior to the making or during the taking of his statement. He was aware of the identity of the person to whom he furnished it; he was informed of his right to counsel and expressed no desire to have an attorney; and he was advised that anything he said could be used against him.

■ The jury believed and found that appellant's mind was not so beclouded with drink that he did not know the nature of what he was doing or saying at the time he signed the statement. As his act in this

respect must be regarded a free and rational one, the statement was not subject to exclusion under the circumstances disclosed. See Carson v. Commonwealth, Ky., 382 S.W.2d 85.

Stemming from the two grounds urged for reversal of the judgment of conviction is the collateral argument that appellant was too drunk to entertain the required intent to commit the offense of which he was charged. It is pointed out in Terhune v. Commonwealth, 144 Ky. 370, 138 S.W. 274, that where an act itself constitutes the offense, drunkenness is no excuse for its commission, but where in order to constitute the offense the act must be combined with the criminal intent of the accused, then drunkenness may be offered as a defense. See also Norman v. Commonwealth, 104 S.W. 1024, 31 Ky.Law Rep. 1283.

■ The jury was instructed to consider the facts introduced as to appellant's being drunk at the time of the perpetration of the offense charged, for the purpose of determining his mental condition and the motive that actuated him in the commission of the offense, if any offense was in truth committed by him; and, the jury was directed that if they believed from the evidence that appellant's mental condition, by reason of drunkenness, was such that he could not have formed an intent to break into the dwelling house of Grant Reed, Jr., with the intent to steal therefrom, they should find him not guilty.

■ The instruction given follows the exact phraseology of one set forth in Section 847 of Volume 3 of Stanley's "Instructions to Juries." There was a question as to whether appellant was so drunk during the break-in that he was deprived of the intent to commit the crime; or as to what degree of sobriety he had at that time. The jury determined he was not so drunk he did not understand the nature of the offense he committed. We cannot say, under the facts presented, that they did not arrive at a correct decision.

Wherefore, the judgment is affirmed.