**Richard SMITH, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–SC–000322–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

Brandon Neil Jewell, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Richard Smith, appeals from a judgment of the Wayne Circuit Court convicting him of wanton murder, three counts of first-degree wanton endangerment, two counts of second-degree wanton endangerment, and sentencing him to a total of twenty years' imprisonment.

As grounds for relief Appellant raises four issues: (1) the trial court erred by denying his pretrial motion to suppress the recorded interview he gave to the police shortly after his arrest; (2) he was entitled to a directed verdict on two of the counts of first-degree wanton endangerment; (3) palpable error occurred as a result of the trial court's failure to define self-protection in connection with the self-defense instruction; and (4) he was entitled to an instruction defining reasonable doubt. Finding no reversible error, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict the facts are as follows. On the evening of September 18, 2009, at around 11:00 p.m. Appellant rode his horse about two miles from his residence to the home of Jonathan and Samantha Rigney, and their two small children, Gabe and Jazzlyn. When Appellant arrived at the Rigney home, Samantha was seated on one side of the front porch, holding Jazzlyn. Jonathan, sitting beside Samantha, was holding Gabe. Samantha's cousin, Stacie Conn, and Stacie's

son, Austin James Conn, were seated on the other side of the porch, which measured about seven feet deep and fourteen feet wide.

As Appellant approached the house, Samantha asked him why he was out so late. Appellant then drew a gun from his pants, and began shooting. As he did so, Samantha was heard to exclaim, "No, Richard, no . . . ." At the first sound of gunfire, Appellant's horse bucked but Appellant continued shooting. Jonathan immediately took Gabe into the house, and then returned to get Jazzlyn. In the meantime, Stacie and Austin successfully took cover inside the house. Altogether, Appellant fired four to six shots. When the shooting concluded, Appellant fled the scene. Samantha was mortally wounded by a gunshot in the forehead and she died at the hospital a short time later.

After Appellant was identified as the shooter, deputies from the Wayne County Sheriffs Office went to his residence. Appellant was not home, but his wife gave them permission to search the property for him. They located the horse, which appeared to have been recently ridden, and they discovered two beers in the saddlebag. After about two hours, the deputies abandoned the search for Appellant and asked his wife to have him call them when he returned.

Appellant called about an hour later and the deputies returned to his residence. When they arrived, Appellant came out of his house drinking a beer. When informed by the officers that they wanted to question him about a shooting, Appellant responded that if he had shot somebody he could not remember doing so. Appellant was subsequently taken to the sheriff's office where he was formally interviewed. It is not disputed that Appellant had been drinking alcoholic beverages and was intoxicated at the time of the interview.

After an appropriate rendition of his *Miranda* warnings, Appellant signed a written acknowledgment that he understood his rights. He then admitted that he was at the Rigney home that evening, and suggested that he had gone there to confront Jonathan because he believed that Jonathan had stolen property from his brother.

At first, Appellant told the officers that when he arrived at the Rigney home and saw a large gathering on the porch, he did nothing more than set off an M–80 firecracker. Later in the interview, however, when asked if anyone else had a gun, Appellant said that when he arrived, Jonathan went inside, got a rifle, and pointed it at him. In this alternate version of events, Appellant said he lit the firecracker in response to Jonathan's threatening gesture with the rifle. However, some time later Appellant again explained that he had set off the firecracker, but he omitted the detail that he did so while Jonathan was pointing a rifle at him. Throughout the interview, Appellant steadfastly maintained that he did not shoot anyone.

Following a jury trial, which based upon the police interview included an instruction on self-defense, Appellant was convicted of murder, three counts of first-degree wanton endangerment, and two counts of second-degree wanton endangerment. As a result of these convictions, Appellant was sentenced to a total of twenty years' imprisonment. This appeal followed.

## II. ADMISSIBILITY OF THE POLICE INTERVIEW

■ Appellant first contends that the trial court erred by denying his pretrial motion to suppress the statements he made to the police in the interview shortly after the shooting. Appellant maintains that the interview should have been sup-

pressed because he was so intoxicated at the time of the interview that his statements were not knowingly, willingly, and voluntarily made.

■ Following a hearing, the trial court determined that Appellant was not so intoxicated as to render involuntary, or otherwise invalidate, the written waiver of his right to remain silent. On appellate review of a trial court's denial of a motion to suppress, we apply the two-step process adopted in *Adcock v. Commonwealth*, 967 S.W.2d 6 (Ky.1998). First, we review the trial court's findings of fact under a clearly erroneous standard. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004). Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. RCr 9.78; *Canler v. Commonwealth*, 870 S.W.2d 219, 221 (Ky.1994). We then "conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision [was] correct as a matter of law." *Payton v. Commonwealth*, 327 S.W.3d 468, 471–72 (Ky.2010) (quoting *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002)).

■ Generally speaking, no constitutional provision protects a drunken defendant from confessing to his crimes. "The fact that a person is intoxicated does not necessarily disable him from comprehending the intent of his admissions or from giving a true account of the occurrences to which they have reference." *Peters v. Commonwealth*, 403 S.W.2d 686, 689 (Ky. 1966). As noted by Justice Palmore in *Britt v. Commonwealth*, "[i]f we accept the confessions of the stupid, there is no good reason not to accept those of the drunk." 512 S.W.2d 496, 500 (Ky.1974). "We are not at all persuaded that it would make sound law to hold that the combination of intoxication and police custody must add up to a violation of due process." *Id.* at 501.

■ However, there are two circumstances in which a defendant's level of intoxication might play a role in the suppression decision. First, intoxication may become relevant because a "lesser quantum" of police coercion is needed to overcome the will of an intoxicated defendant. *Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir.2002) (quoting *United States v. Sablotny*, 21 F.3d 747, 751 (7th Cir.1994)) ("When a suspect suffers from some mental incapacity, such as intoxication or retardation, and the incapacity is known to interrogating officers, a 'lesser quantum of coercion' is necessary to call a confession into question."); *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir.1991) ("[W]hen the interrogating officers reasonably should have known that a suspect is under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession."); *Jones v. Commonwealth*, 560 S.W.2d 810, 814 (Ky.1977) (intoxication may be a factor that, "under certain circumstances," could cause a confession to be suppressed for lack of voluntariness). Thus, trial courts must consider a defendant's level of intoxication when considering whether police coercion has overborne a defendant's will so as to render the confession involuntary for purposes of the Due Process Clause.

Second, a confession may be suppressed when the defendant was "intoxicated to the degree of mania" or was hallucinating, functionally insane, or otherwise "unable to understand the meaning of his statements." *Halvorsen v. Commonwealth*, 730 S.W.2d 921, 927 (Ky.1986) (quoting *Britt*, 512 S.W.2d at 499); *Peters*, 403 S.W.2d at 688. Under those circumstances, suppression may be warranted not because the confession was "coerced" but because it is

unreliable. *Britt,* 512 S.W.2d at 500 (quoting Marshall & Steiner, *The Confessions of a Drunk,* 59 ABAJ 497 (1973)) ("[W]hen intoxication reaches the state in which one has hallucinations or 'begins to confabulate to compensate for his loss of memory for recent events' . . . the truth of what he says becomes strongly suspect.").

Neither of these exceptions is applicable here. First, there was no evidence of coercive influence by the police. All of the evidence tended to show that Appellant freely and knowingly accompanied the police to the headquarters for the express purpose of submitting to questioning about his alleged participation in the shooting. In addition, the record discloses that Appellant was read his *Miranda* rights at the beginning of the station interview, and that he signed a waiver form reflecting that he understood these rights and was voluntarily waiving them for the express purpose of the interview. Therefore, the first exception does not apply. It is well-established that no constitutional violation may occur in the absence of state-sponsored coercion. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not Voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."); *Watson v. DeTella,* 122 F.3d 450, 453 (7th Cir.1997) ("Absent a showing of some type of official coercion, however, a defendant's personal characteristics alone are insufficient to render a confession involuntary.").

Further, a review of the interrogation discloses that Appellant was not so intoxicated to the degree of mania, hallucinations, or functional insanity. There is no basis to conclude that the interview should have been suppressed on the basis that Appellant was so intoxicated that his statement was inherently unreliable.

The trial court's findings of fact following a suppression hearing are conclusive if supported by substantial evidence. RCr. 9.78; *Springer v. Commonwealth,* 998 S.W.2d 439, 446 (Ky.1999). Here the trial court's finding that Appellant's statements to the police were knowing, willing, and voluntary was supported by substantial evidence. It follows that the trial court properly denied his motion to suppress his post-shooting interview with the police.

## III. SUFFICIENCY OF EVIDENCE ON FIRST–DEGREE WANTON ENDANGERMENT CHARGES

■ Appellant next contends that he was entitled to a directed verdict on the two first-degree wanton endangerment charges involving Jonathan and Gabe, who were seated next to Samantha at the time of the shooting. He argues that none of the bullets endangered Jonathan or Gabe as evidenced by the fact that no bullet holes were found in the exterior walls of the Rigney home. More concisely, he contends that except for the bullet that went into the center of Samantha's forehead, none of the shots came close to hitting anyone, thereby negating the essential element of first-degree wanton endangerment: conduct that creates a substantial danger of death or serious physical injury to another person.[1]

■ When considering a motion for a directed verdict, the trial court is required to "draw all fair and reasonable inferences from the evidence in favor of

1. KRS 508.060 provides that "[a] person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

the Commonwealth." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). Only when the evidence is insufficient to induce reasonable jurors to believe beyond a reasonable doubt that defendant is guilty, should a directed verdict be given. *Id.* "For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Id.* "On appellate review, the test of directed verdict is, if under the evidence as whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* "There must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187–88.

The evidence in this case easily satisfies the elements of first-degree wanton endangerment. As described in the trial testimony, after becoming voluntarily intoxicated, Appellant sat astride a horse just twenty-four feet from a small porch occupied by three adults and three children. He then deliberately fired a shot to the side of the porch where Jonathan and Gabe were seated. Even though his horse began to buck when the first shot was fired, Appellant continued firing his pistol from atop an uncontrolled horse. Indeed, it was under the circumstances just described that Samantha, seated only a few feet from Jonathan and Gabe, was shot. It is therefore easily seen that if the horse had bucked in a slightly different way as Appellant continued to fire his gun, any of the shots could have hit Jonathan or Gabe as surely as the one that hit Samantha.

Appellant's conduct, as indicated by the Commonwealth's evidence, exhibited an extreme indifference to the value of human life and created a substantial danger of death or serious physical injury to Jonathan and Gabe. Appellant was not entitled to a directed verdict on these two charges. *See Port v. Commonwealth,* 906 S.W.2d 327, 334 (Ky.1995) (holding that there was sufficient evidence of wanton endangerment where defendant pointed a gun and fired two shots while in a crowded restaurant, thereby creating dangerous atmosphere for other diners); *Combs v. Commonwealth,* 652 S.W.2d 859, 860–61 (Ky. 1983) (holding that there was sufficient evidence of wanton endangerment where a bullet came within fifteen feet of a bystander); *Hunt v. Commonwealth,* 304 S.W.3d 15, 38 (Ky.2009) ("It is self-evident that bullets may ricochet."). *Cf. Swan v. Commonwealth,* 384 S.W.3d 77, 104 (Ky. 2012) (holding that there was insufficient evidence of wanton endangerment where evidence established that the victim was in a back bedroom, behind a closed door, and hiding under a bed when three shots were fired in the front living room). As such, we conclude that there was no error.

## IV. INSTRUCTIONAL ERROR— FAILURE TO DEFINE "SELF-PROTECTION"

Appellant next contends that the trial court's instruction on self-protection erroneously failed to provide the jury with the definition of the term "self-protection." Appellant asserts that his general request for an instruction on his self-defense theory of the case, with which the trial court agreed, adequately preserved his complaint regarding the erroneous omission of the definition of "self-protection." He further argues that, in the event we conclude the issue was not preserved, we should accord him palpable error review under RCr 10.26.

First, we cannot agree with Appellant's contention that the issue was

preserved for appellate review. Fundamental to the concept of preservation of trial error in any context is that the trial judge was explicitly made aware of the action desired by the party. By definition, an assignment of error cannot be regarded as "preserved" if its significance was never brought to the trial judge's attention.

In a case also rendered today by this Court, *Martin v. Commonwealth*, 409 S.W.3d 340, 346, 2012–SC–000225–MR, 2013 WL 5406640 (Ky. Sept. 26, 2013), we explain the effect of RCr 9.54(2) as a bar to appellate review of assignments of error in the "giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." RCr 9.54(2). In *Martin*, we held that RCr 9.54(2) precludes palpable error review of an unpreserved error in the failure to give a specific jury instruction. However, we drew a distinction between errors in the failure to give an instruction at all in comparison to defects in instructions that were otherwise properly given, holding that the latter are subject to consideration under RCr 10.26 for palpable error, whereas the former are not.

■ Here, the trial court did not entirely fail to give a self-protection instruction and, therefore, RCr 9.54(2) does not operate as a bar to appellate review.[2] Having agreed that Appellant was entitled to a self-protection instruction, it was incumbent upon the trial court to then correctly instruct the jury on that theory. However, upon the trial court's failure to include a definitional instruction, Appellant was not relieved of his obligation to preserve the issue by objecting to the flawed instruction in a timely and appropriate manner. Had he done so, we would be authorized to consider his claim that the instruction was flawed under the standard of review for preserved error. Because he did not preserve the issue, Appellant's assignment of error is limited to the significantly higher standard of palpable error review under RCr 10.26, which permits relief *only* if the claimed error resulted in manifest injustice.

The definition of self-protection is an essential component of a proper instruction on the defense of self-protection. A proper self-protection instruction must include the corresponding definition of self-protection set forth in KRS 503.050, such as the example provided in 1 William S. Cooper 85 Donald P. Cetrulo, *Kentucky Instructions to Juries (Criminal)* § 11.07 (5th ed.2012).[3] While we agree with Ap-

2. We note that the Commonwealth does not assert RCr 9.54(2) as a bar to appellate review.

3. Paragraph 4 of Cooper and Cetrulo's Instruction at § 11.05, restated to conform to the evidence in this case, would provide:

SELF PROTECTION

[A.] If at the time an individual, including the Defendant, uses physical force upon another person he believes that person was then and there about to use physical force upon him, he is privileged to use such physical force against that person as he believes to be necessary in order to protect himself against it, including the right to use deadly physical force but only if he believed deadly physical force to be necessary to protect himself from death or serious physical injury;

[B.] A person who is not engaged in an unlawful activity and who is attacked in place where he has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

pellant that the trial court erred by failing to give a definitional instruction corresponding with the self-protection instruction, under the circumstances of this case, we are persuaded that the error did not result in a manifest injustice.

Several factors compel this conclusion. First, while resolving issues of credibility is the function of the jury, we find it extremely unlikely that the missing instruction would have influenced the jury in favor of Appellant's theory that he did not fire his gun until after Jonathan aimed a rifle at him. Jonathan had no apparent motive to do that, and twice during his police interview Appellant described the incident without ever mentioning such a critical detail. Stated otherwise, Appellant gave inconsistent versions of what occurred, first claiming that he did nothing but set off a firecracker, apparently to account for the blast. Only when prompted by a question regarding whether anyone *else* had a gun did Appellant mention that Jonathan pointed a gun at him. Appellant's apparent theory that he responded to the alleged threat of Jonathan's rifle by standing his ground and lighting a firecracker strains credulity. The evidence further indicated that police found no rifle at the scene of the shooting to support Appellant's theory, and Jonathan was a convicted felon who was ineligible to possess a rifle. Appellant's flight from the scene after the shooting, a well-recognized indication of guilt, further weakened his claim, and lessens the likelihood that the missing instruction caused a miscarriage of justice.

And finally, a self-defense instruction *was* given, so Appellant was free to argue his defense to the jury and take it upon himself, through counsel, to explain the meaning of self-protection. Generally, a palpable error affects the substantial rights of the party "only if it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth*, 160 S.W.3d 744, 762 (Ky.2005) (quoting Christopher C. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 21 (2d ed.1994)). In light of all of the above factors, it is highly unlikely that with a corrected self-protection instruction incorporating the definitional component of the defense, the jury would have accepted Appellant's theory and entered a verdict of acquittal. It follows that there is not a reasonable possibility that but for the error the results of the trial would have been different. There was no manifest injustice here. Appellant is not entitled to relief under RCr 10.26.

## V. REASONABLE DOUBT INSTRUCTION

Finally, Appellant contends that the trial court erred by denying his request for an instruction defining reasonable doubt. His proposed instruction was based upon the formulation approved by the Second Circuit Court of Appeals in *United States v. Shamsideen*, 511 F.3d 340, 343–45 (2d Cir.2008).[4]

---

4. Appellant proposed the following instruction defining "reasonable doubt":
REASONABLE DOUBT
I have said that the Commonwealth must prove Mr. Smith guilty beyond a reasonable doubt. The question naturally is, "What is a reasonable doubt?" The words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And, it is not sympathy.

In 1978, this Court amended RCr 9.56 to eliminate a former articulation of the concept of "reasonable doubt" and to explicitly provide that the jury should not be instructed upon a definition of "reasonable doubt." In *Commonwealth v. Callahan,* 675 S.W.2d 391, 393 (Ky.1984), we extended the well-settled prohibition of defining reasonable doubt to all points in a trial proceeding, stating "trial courts shall prohibit counsel from any definition of 'reasonable doubt' at any point in the trial...."

In light of our well-established authorities disallowing any party from defining reasonable doubt at any stage of the trial, the trial court did not err by denying Appellant's request to do just that. Nevertheless, we appreciate defense counsel's effort to resurrect the issue because it offers this Court the opportunity to re-examine settled precedent and policy. However, upon reflection and reconsideration of the issue, we remain convinced that the better course is the policy embodied in the current version of RCr 9.56. Ironically, the opening passage of Appellant's proposed definition sets out the strongest argument for its rejection: "The words [reasonable doubt] almost define themselves." The words are not confusing or complex and the many efforts we have seen to elaborate upon them are not enlightening. The proposed embellishments raise as many questions as they answer; they tend only to obscure the simple concept by concealing it in a garland of verbiage. Accordingly, we decline

this invitation to gild the lily; some things are best left as they are, simple and unadorned. So it is with the term "reasonable doubt."

## VI. CONCLUSION

For the foregoing reasons, the judgment of the Wayne Circuit Court is affirmed.

All sitting. All concur.

In a criminal case, the burden is at all times upon the Commonwealth to prove guilt beyond a reasonable doubt. The law does not require that the Commonwealth prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict. This burden never shifts to the accused, which means that it is always the Commonwealth's burden to prove each of the elements of the crime charged beyond a reasonable doubt.

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt, it is your duty to acquit Mr. Smith. On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of Mr. Smith's guilt beyond a reasonable doubt, you should vote to convict.