# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 13, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000146-MR

**MARLON WALLS**             **APPELLANT**

ON APPEAL FROM FRANKLIN CIRCUIT COURT

V.          HONORABLE THOMAS D. WINGATE, JUDGE

NO. 17-CR-00305-001

**COMMONWEALTH OF KENTUCKY**           **APPELLEE**

## MEMORANDUM OPINION OF THE COURT

### REVERSING AND REMANDING

A Franklin County jury found Marlon Walls guilty of first-degree trafficking in a controlled substance, second or greater offense. Following the jury verdict, the court sentenced Walls to 20 years' imprisonment, per the jury recommendation. Walls appeals as a matter of right alleging the following errors: (1) the trial court's failure to direct a mistrial; (2) the trial court's error in admitting irrelevant and prejudicial evidence as well as evidence in violation of Kentucky Rule of Evidence (KRE) 404(b); (3) the Commonwealth's lack of notice of its intent to introduce KRE 404(b) evidence; (4) improper jury instructions; (5) denial of an unanimous verdict; (6) denial of directed verdict;

(7) the Commonwealth's improper attempt to define reasonable doubt in *voir dire*; and (8) cumulative error. After careful review, we vacate Walls's conviction and remand for a new trial.

## I. BACKGROUND

On July 27, 2017, the Franklin County Sheriff's Office was contacted by a confidential informant (CI) who claimed to be able to purchase heroin from a man known as "Bruno." Detective Jeff Farmer knew "Bruno" to be Walls so Farmer used the CI to set up a "controlled buy" of drugs. Farmer searched the CI, provided the CI with a recording device, photographed the buy money, and drove the CI to meet "Bruno." The transaction took place at a convenience store in Frankfort, Kentucky. The CI got into the car with Bruno and returned to Farmer, alleging that he purchased heroin. Another Detective with the Franklin County Sheriff's Office, Detective Banta, watched "Bruno's" car drive to 1020 Champion Way. Farmer drove the CI to 1020 Champion Way to confirm it as "Bruno's" residence.

Farmer alleged to have set up a second buy with the CI later the same day at the same convenience store. Farmer testified that he watched 1020 Champion Way and saw Walls and a white female leave the apartment in a gold, Chevy sedan and drive to the convenience store to meet the CI. At the convenience store, the female entered the store and the CI got into the car to purchase drugs. Walls and the female returned to the residence on Champion Way. Farmer obtained a search warrant on July 28, 2017 for Walls's person and the Champion Way residence, based on the CI transactions.

2

Farmer instructed the CI to make another buy from Walls at the convenience store. Farmer watched Walls leave the residence, go to the convenience store, and enter the store. Farmer and other officers approached Walls as he exited the store and executed the search warrant on his person. The search revealed some money and a key to the residence, as well as two $50 bills. While Walls was detained at the store, Det. Banta and other officers went to the Champion Way residence to execute that warrant. Laura Jones was inside the apartment. Jones removed a bag of heroin from her bra and told Det. Banta that it was not hers, but that Walls had given her the heroin and told her to hide it on her body.

At trial, Jones testified against Walls and stated that the two were staying with a friend at the Champion Way residence and that Walls supplied her with heroin and also trafficked in heroin. The jury found Walls guilty of trafficking heroin, and the trial court imposed the jury's recommended sentence of twenty years. We set forth additional facts as necessary.

## II. ANALYSIS

### A. Walls's due process rights were violated through testimony regarding the CI.

Walls first contends that he was denied a fair trial due to the trial court admitting irrelevant and prejudicial evidence relating to the officers' investigation and Walls's alleged prior bad conduct. Each claim of error will be addressed, along with the relevant facts and preservation of each issue.

3

## 1. Evidence of prior alleged instances of uncharged trafficking.

Prior to trial, Walls asked the trial court to compel the Commonwealth to turn over any exculpatory or impeachment evidence regarding the CI and the controlled buys. The Commonwealth responded that the CI would not be testifying at trial and the Commonwealth did not plan to use the CI or controlled buys at trial. Walls also argued in limine to exclude: (1) any mention of the controlled buys before the officers' contact with Jones at the residence and (2) any prior criminal records or statements regarding Walls selling, using, or trafficking in drugs. The Commonwealth conceded it would not mention prior convictions and would use the term "prior investigation" when it alluded to Walls's alleged trafficking in drugs with the CI. The Commonwealth intended to state that Walls had two $50 bills on him that were used in a prior investigation. Walls responded that the controlled buys were uncharged allegations, and the use of the $50 implied that there were earlier controlled buys, and this was unduly prejudicial. The trial court overruled Walls's motion, finding it appropriate for the officers to testify about having search warrants because of prior drug trafficking.

At trial, the Commonwealth introduced the two $50 bills through the Franklin County evidence custodian. Det. Farmer testified for the Commonwealth and stated that he asked his informant what car Walls was driving and that he instructed the informant to make another transaction for heroin prior to the execution of the search warrant. Walls objected and requested a mistrial. The court informed the Commonwealth that these things

4

were not to be discussed. Defense counsel stated that an admonition could not unring the bell, but to give the admonition to the jury if the trial court would not grant a mistrial. The trial court admonished the jury.

The Commonwealth later asked Det. Farmer if two $50 bills were found on Walls's person. Defense counsel objected again, and the court cautioned the Commonwealth about the questioning. The Commonwealth continued its examination and Det. Farmer testified that the two $50 bills had originated in the Sheriff's office, were involved with the investigation prior to execution of the search warrant, and they were found in Walls's possession. In closing, the Commonwealth said, "It doesn't really matter evidence of drug activity is found in [Walls's] possession with the two $50 bills. Those two $50 bills matched up by serial number to the bills involved in that investigation. But, that doesn't really matter." Walls maintains there was never any testimony regarding the serial numbers on the bills. During deliberations, the jury asked two questions: "What can we conclude from the evidence of $50 found on the defendant?", and "How did Mr. Walls obtain the two $50 bills?" The trial court declined to answer either question and stated, outside the presence of the jury, "I wish I had ruled the other way."

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

KRE 401.

> [E]vidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the

5

issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

KRE 403.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

KRE 404(b)(1)&(2).

The case of *Graves v. Commonwealth*, 384 S.W.3d 144 (Ky. 2012), is instructive. On appeal, Graves alleged that the trial court erred in admitting into evidence allegations that Graves had sold drugs on occasions other than the one being tried. *Graves*, 384 S.W.3d at 147. "We have recognized that 'it would typically be improper for the Commonwealth or a testifying witness to refer to the undercover buys as Appellant was not being tried for such conduct.'" *Id.* at 148 (citing *Muncy v. Commonwealth*, 132 S.W.3d 845, 847 (Ky. 2004)). In *Graves*, the Commonwealth argued that prior drug transactions were relevant to show modus operandi. This Court rejected that theory and we must do the same here. In *Graves*, we said that "the Commonwealth is not inferring the unknown event (that Appellant sold cocaine in May) from a known event (that Appellant sold cocaine in April)." *Id.* at 150. "The proof linking Appellant to the April crime is no better than the proof linking him to the crime on trial. In fact, it's the exact same evidence[.]" *Id.*

6

In the case before us, we begin by reiterating that the Commonwealth affirmatively stated it would not be using evidence related to the CI. Unlike *Graves*, the Commonwealth did not present an admissible basis on which to admit such evidence, and this Court declines to *sua sponte* provide the Commonwealth with such justification on appeal. We also note that, like *Graves*, "the proof linking [Walls] to the [prior] crime is no better than the proof linking him to the crime on trial." *Id.* at 150. The evidence identifying Walls as the drug dealer in the prior controlled buys is the use of the CI and the two $50 bills, which is the exact same evidence that identifies him in the crime charged. *See id.* at 150.

As in *Graves*, "under such circumstance, the only relevance of the 'other crimes' evidence is to suggest that the accused has the propensity to commit the offense under review. That of course, is the very thing that KRE 404(b) prohibits." *Id; See also Howard v. Commonwealth*, 2009-SC-000408-MR, 2011 WL 1103140, *1, *7 (Ky. March 24, 2011) ("Evidence of prior, uncharged drug dealing in a drug trafficking case is precisely the kind of evidence KRE 404(b) is designed to exclude.").

### 2. Mistrial and Walls's Due Process Rights.

Despite the holding that the above evidence was admitted in error, we must consider whether the error was harmless. "[P]reserved evidentiary and other non-constitutional errors will be deemed harmless . . . if we can say with fair assurance that the judgment was not substantially swayed by the error." *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013) (citing *Winstead v.*

7

*Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009)). "Our inquiry is not simply 'whether there [is]enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Ordway*, 391 S.W.3d at 774 (internal citations omitted). "As to those preserved constitutional errors which are subject to harmless error review, they must be shown to be 'harmless beyond a reasonable doubt' in order to be deemed harmless." *Id.* (internal citations omitted).

As will be discussed below, the error in admitting evidence related to the prior uncharged "controlled buys" was not harmless because it implicated and infringed upon Walls's constitutional rights. However, the error in admitting the evidence, without turning to the constitutional issues, was also not harmless. "Under KRE 404, the evidence of other crimes is presumptively prejudicial." *Graves*, 384 S.W.3d at 150. Jones was the only witness who testified to Walls being the source of the heroin found based on the execution of the search warrants. Jones testified that she had assisted Walls in the past with his trafficking and that she was a drug user herself. Jones testified that she accepted a plea deal from the Commonwealth in exchange for her testimony against Walls. Looking at the Commonwealth's case as a whole, the inadmissible evidence relating to the CI and the $50 was particularly significant, because, otherwise, Jones's testimony simply required the jury to

make a pure credibility determination in finding guilt.[1] For this reason alone, this Court holds that it was reversible error to admit such testimony and evidence relating to the CI and the two $50 bills.

In opening statements, the Commonwealth told the jury they would hear evidence that "the Sheriff's office received reports of the defendant selling heroin, and they began an investigation into his activities based upon those

---

[1] *Howard v. Commonwealth*, 2009-SC-000408-MR, 2011 WL 1103140, *1, *8 (Ky. March 24, 2011).

> This is not a case of a fleeting reference to a prior bad act unsolicited by the Commonwealth. Rather, this is a case where on multiple occasions the Commonwealth deliberately and methodically elicited inadmissible testimony relating to past drug dealing by Howard. It is self-evident that the parade of witnesses testifying concerning prior drug dealing by Howard was overwhelmingly prejudicial. Through this testimony Howard was comprehensively and definitively portrayed as a habitual drug dealer.

> Moreover, as previously noted, Natasha King was the only witness directly implicating Howard as the source of the pills sold to the Hanlons on the three August transactions. King, according to the record, is herself a drug dealer and drug user, who agreed to testify against Howard in order to strike a better deal for herself on her own drug trafficking indictments. Therefore, to a significant degree, the case for each of the three August transactions simply pitted King's credibility against Howard's credibility. It follows that the plethora of witnesses who were examined by the Commonwealth regarding Howard's prior drug dealing was particularly significant under the facts of this case.

> For these reasons, and based upon our consideration of the whole case, we are constrained to conclude that a substantial possibility exists that, absent the erroneous prior drug dealing evidence, the verdict returned by the jury may have been different for any of the three charges occurring in August 2008. (internal citations omitted).

9

reports.[2]" "Before the execution of the search warrant, they caused a call to be made to Mr. Walls for purposes of drug trafficking activity. And they went to the place where it was to take place and there Mr. Walls appeared."[3]

The Commonwealth's second witness was Det. Farmer. Det. Farmer provided testimony regarding his employment and experience as a narcotics detective as well as stated his involvement in an investigation of Walls. As the Commonwealth began to ask questions regarding the search warrant obtained in the case, defense counsel renewed Walls's motion in limine regarding the introduction of any evidence of uncharged acts or prior investigations, including the controlled buys and the fruits of those uncharged acts, such as the money and the surveillance of the house.[4]

Less than three minutes later, the Commonwealth asked Det. Farmer about the execution of the search warrant, to which Det. Farmer explained that he had desired to execute the warrant while Walls was still in the residence, but he was not sure what vehicle Walls was driving that day.

> DF: I could see what vehicles were in the parking lot and I took a mental note of it. And I called my informant and I said what do you think he's driving today. The informant said I'm pretty sure he's in a black Mercedes and it's got a funny looking license plate on it. They said I don't know what state it is, it's just a unique. . .[5]

---

[2] Trial, 12/18/17, 11:35:55-11:36:06 a.m. Defense counsel made no objection to these statements.

[3] *Id.* at 11:37:38-11:37:55 a.m. Defense counsel made no objection to these statements.

[4] *Id.* at 1:40:00-1:41:06 p.m.

[5] *Id.* at 1:43:40-1:43:58 p.m.

10

Defense counsel objected and the Commonwealth and the judge both said the testimony was hearsay, and the judge sustained the objection. Det. Farmer then continued:

DF: I then instructed the informant to go ahead and make another transaction for heroin.[6]

The Commonwealth stopped Det. Farmer and defense counsel objected and a bench conference ensued. Walls's counsel stated that the Commonwealth was presenting testimony of uncharged controlled buys and defense requested a mistrial.

CW: Well, it's nothing that can't be corrected at this point.

TJ: Why are you talking about these? I thought we weren't supposed to talk. . . .

CW: I know, I know, I know, I know.

. . .

TJ: I really don't want to do a mistrial but I will give some type of admonition. What do you think I ought to do?

W: Your Honor, the bell has already been rung. . . . I don't think you can unring the bell, Judge. But if you're going to, say to disregard any statements by Det. Farmer of what he told someone to do that didn't testify.
. . .

TJ: I am going to tell them to disregard that last statement that he instructed them to make another controlled buy. Okay. That's about the best I can do. Overrule your mistrial and let's see how far we can get with this.

The trial judge then gave this admonition to the jury:

---

[6] *Id.* at 1:44:18-1:44:27 p.m.

11

There was an objection to some testimony and the objection was talking about making another controlled buy. We are going to, I want you to disregard that. We are not talking about controlled buys. We are only talking about this specific instance that the individual has been indicted for. Do you understand? Just disregard that and make sure that you, Det. Farmer, just talk about the instance we are dealing with today.[7]

Less than two minutes later, the Commonwealth asked Det. Farmer if he had seen Walls at the BP convenience store before, to which Det. Farmer said "yes." Less than four minutes later, the Commonwealth asked about two $50 bills found on Walls at the convenience store. "And those two $50 bills were taken into evidence and secured. . ."[8]

Defense counsel objected and, at the bench, reiterated Walls's objection that Det. Farmer could not discuss the $50 bills without getting into the previous uncharged misconduct. The Commonwealth responded, "let me ask a question and see how it goes."[9] The trial judge responded, "try and see, but hey, you're getting really close to. . ." The Commonwealth said, "I understand."

The very next question from the Commonwealth:

CW: I want to talk to you about these two $50 bills. Have you seen these before?

DF: Yes, sir.

CW: Were they involved in your investigation prior to the execution of the search warrant?

DF: They were.

---

[7] *Id.* at 1:46:08-1:46:39 p.m.

[8] *Id.* at 1:52:16-1:52:22 p.m.

[9] *Id.* at 1:52:47-1:52:50 p.m.

CW: Did they originate with your office?

DF: They sure did.

CW: And were they found in Mr. Walls's possession?

DF: That's correct.[10]

In its closing argument, the Commonwealth argued, "It doesn't really matter evidence of drug activity is found in Marlon Walls's possession with the two $50 bills. Those two $50 bills matched up by serial number to the bills involved in that investigation. But that doesn't really matter."[11] During deliberations, the jury sent two questions to the court: "What can we conclude from the evidence of $50 found on the defendant? And How did Mr. Walls obtain the two $50 bills?" The trial court did not answer either question and stated, outside the presence of the jury, "I wish I had ruled the other way."[12]

Walls's counsel moved for a mistrial which was denied by the trial court. After this denial, the Commonwealth continued to elicit testimony and evidence that the Commonwealth had previously asserted would not be introduced at trial. "The standard for reviewing the denial of a mistrial is abuse of discretion. A mistrial is appropriate only where the record reveals 'a manifest necessity for such an action or an urgent or real necessity.'" *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002) (internal citations omitted).

---

[10] *Id.* at 1:53:00-1:53:14 p.m.

[11] *Id.* at 3:38:43-3:38:59 p.m.

[12] *Id.* at 4:14:00-4:15:00 p.m.

13

"The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Webb v. Commonwealth*, 387 S.W.3d 319, 324 (Ky. 2012) (internal citations omitted). "[T]he power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000) (citing *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991))). "[T]he judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Grimes v. McAnulty*, 957 S.W.2d 223, 224 (Ky. 1997) (quoting *United States v. Jorn*, 400 U.S. 470, 486 (1971)). For several reasons, this Court holds that Walls's trial was fundamentally unfair.

In *Sneed v. Burress*, 500 S.W.3d 791 (Ky. 2016), defense counsel commented, in opening statements, that one of the Commonwealth's witnesses "used untruthfulness as a mechanism for revenge." The Commonwealth objected and moved for a mistrial. *Sneed*, 500 S.W.3d at 792. After a lengthy discussion, the trial court denied the motion for mistrial and admonished the jury. *Id.* Defense counsel continued her opening statement saying that "there are notes about [another witness's] trouble with lying." *Id.* The Commonwealth again moved for a mistrial, which the court granted. *Id.* In holding that defense counsel's statements constituted improper evidence which

14

prejudiced the Commonwealth's right to a fair trial, thus making a mistrial the appropriate remedy, the Court made clear:

> It is also critical to consider the specific context in which defense counsel's impermissible statements were received by the jury here. The remarks by Sneed's attorney that triggered the Commonwealth's second mistrial motion occurred within minutes after the jury was admonished to disregard counsel's previous statement indicating that one of the Commonwealth's witnesses was lying. Prior to that admonition, defense counsel was instructed by the court not to comment on the truthfulness of any witness and was specifically told not to use the word "lied" when referring to witnesses. Trial courts must be afforded wide latitude in controlling the discipline of their own court rooms and orderly trial proceedings. Declaring a mistrial is an extreme, but sometimes necessary measure available to the trial arbiter.

*Id.* at 795.

The same is true in the instant case. At the last bench conference for Walls's objection to the testimony regarding the $50 bills and the previous uncharged conduct, the Commonwealth's very next series of questions elicited testimony from Det. Farmer that the $50 bills originated from previous investigations with Walls. This occurred a very short time after the jury was told to disregard statements by Det. Farmer that he instructed the informant to make another transaction for heroin, and after the trial court's admonishment that the jury disregard "controlled buys." Walls made a continuing objection to the line of questioning and the introduction of such evidence. The Commonwealth acknowledged it should not have continued the line of questioning, but yet, did not hesitate to do so.

> While a jury is presumed to follow an admonition to disregard evidence, there are two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the

15

court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial."

*Combs v. Commonwealth,* 198 S.W.3d 574, 581-82 (Ky. 2006) (internal citations omitted) (emphasis in original).

Here, there was an overwhelming probability that the jury would be unable to follow the court's admonition because it continued to be presented with such evidence and testimony by the Commonwealth after the admonition and continuing objections. There is also a very strong likelihood that the evidence was devastating to Walls; in fact, it denied Walls his right to a fair trial.

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. This right, often termed the 'right to present a defense,' is firmly ingrained in Kentucky jurisprudence, and has been recognized repeatedly by the United States Supreme Court. Of course, not all evidentiary errors implicate the constitution. But [a]n exclusion of evidence will almost invariably be declared unconstitutional when it significantly undermine[s] fundamental elements of the defendant's defense. As this Court has noted: "It is crucial to a defendant's fundamental right to due process that he be allowed to develop and present any exculpatory evidence in his own defense, and we reject any alternative that would imperil that right. A trial court may only infringe upon this right when the defense theory is unsupported, speculative, and far-fetched and could thereby confuse or mislead the jury.

*Daugherty v. Commonwealth,* 467 S.W.3d 222, 236 (Ky. 2015) (internal citations and quotations omitted).

> Except for good cause shown, not later than forty-eight (48) hours prior to trial, the attorney for the Commonwealth shall produce all statements of any witness in the form of a document or recording in its possession which relates to the subject matter of the witness's testimony and which (a) has been signed or initialed by

16

the witness or (b) is or purports to be a substantially verbatim statement made by the witness. Such statement shall be made available for examination and use by the defendant.

Kentucky Rule of Criminal Procedure (RCr) 7.26(1). "The Commonwealth's ability to withhold an incriminating oral statement through oversight, or otherwise, should not permit a surprise attack on an unsuspecting defense counsel's entire defense strategy." *Chestnut v. Commonwealth,* 250 S.W.3d 288, 296 (Ky. 2008).

The right to cross-examine a witness to impeach credibility or show motive or prejudice is fundamental to a fair trial. *Williams v. Commonwealth,* 569 S.W.2d 139 (Ky. 1978). "[I]nformation which affects the credibility of prosecution witnesses clearly falls within the category of exculpatory evidence." *Rolli v. Commonwealth,* 678 S.W.2d 800, 802 (Ky. 1984) (internal citations omitted). Walls filed a Motion for Exculpatory and Impeachment Information, Including Any Arrangements or Promises to Commonwealth Witnesses prior to trial. The Commonwealth would have been subject to compliance with the order pursuant to RCr 7.26(1). However, the Commonwealth disclaimed any intent to use such evidence:

> Well here's the problem. We're not trying no case involving a confidential witness. Uh, there's, there was a couple of buys made from Mr. Walls with a confidential witness then we obtained a search warrant based on his prior buys. Before they even went to execute the search warrant, however, they ran into Mr. Walls at a convenient store. His, uh, the female companion he was with gave them a quantity of drugs, heroin, that he had told her to stuff in her bra and hold it for him while he went in the convenient store. So there's not going to be a confidential witness testifying at the trial or involved in this case at all.

17

The trial court responded: "You're not going to use... they're not going to use those. So that goes out. . . . So you're not going to use those confidential buys, you're just going to use the other stuff. Okay."

Where the prosecutor withholds evidence on demand of an accused which, if made available, would [or might] tend to exculpate him or reduce the penalty, such is a violation of due process. *Brady v. Maryland,* 373 U.S. 83, 87-88 (1963).

"A cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused cannot be countenanced." *James v. Commonwealth,* 482 S.W.2d 92, 94 (Ky. 1972). "The surprise which will authorize the court to continue a case or discharge the jury is not the mere mental emotion of a party upon being confronted with evidence he hoped would not be produced, but must be the result of a practical injustice to his substantial rights. He must show that he has been in some way injured or misled by what has happened, and that, if a reasonable opportunity is afforded him, he can remedy the evil." *Underwood v. Commonwealth,* 84 S.W. 310, 312 (Ky. 1905).

Walls's substantial due process rights were violated when the Commonwealth affirmatively stated the confidential informant would not be testifying at the trial or involved in the case at all and then introduced that evidence anyway. The trial court's acceptance allowed the Commonwealth to avoid providing Walls with its information on the CI (information in the form of statements made by the CI to Det. Farmer or the Commonwealth's Attorney

18

and the audio and video recordings obtained by the CI in the alleged "controlled buys."). The Commonwealth's subsequent intentional introduction of such testimony into evidence was not only disingenuous and deceitful, but was a clear practical injustice to Walls's preparation of a defense. The surprise attack of such evidence at trial, with absolutely no action to take in response, deprived Walls of the constitutional protections of the United States and Kentucky Constitutions. Such injustice compels this Court to hold that the trial court abused its discretion in denying the mistrial.

Because we agree that Walls was denied due process as outlined above, we address only those remaining arguments that are likely to resurface on retrial.

### 3. Jones's testimony regarding Walls's trafficking in drugs.

At a pretrial hearing, Walls moved for exculpatory or impeachment evidence relating to Jones, as Jones had entered a guilty plea in exchange for her testimony against Walls. The Commonwealth indicated that it would provide counsel with the plea agreement relating to Jones. At trial, the Commonwealth asked Jones about her history with Walls, where Jones testified that Walls supplied her with heroin. The Commonwealth asked Jones if Walls trafficked in heroin at that time. Defense counsel objected, arguing that the testimony was unrelated to the charges. The court overruled the objection and Jones testified that she had hidden heroin in and on her body for Walls in the past, that Walls had no job, did not collect disability or unemployment income, but had money and heroin.

19

As stated previously, evidence of prior bad acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident or if so inextricably intertwined with other evidence. KRE 404(b)(1)&(2). In this case, Walls was charged with trafficking in a controlled substance, namely heroin. Upon execution of the search warrant at the Champion Way residence, Jones removed 11 grams of heroin from her bra and informed the police that Walls had asked her to hide it for him. Jones's testimony at trial about Walls giving her drugs in the past was necessary to establish Walls's identity in giving her drugs in the instant case. This testimony was also inextricably intertwined with the recovery of 11 grams of heroin upon execution of the search warrant. Because evidentiary errors are reviewed for abuse of discretion, this Court finds no reason to hold Jones's testimony inadmissible, and, on remand, the trial court may again, in its discretion, admit this testimony.

**B. Notice.**

Walls's next argument is that the Commonwealth did not provide notice of its intent to introduce KRE 404(b) evidence. Because this matter is being remanded, we do not address this issue, and note that Walls is now on notice of the intended evidence of Jones and the CI. We do, however, remind the Commonwealth that "if the prosecution intends to introduce [404(b) evidence] as a part of its case in chief, **it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence.**" KRE 404(c) (emphasis added). Such compliance with the Rule is expected. If the Commonwealth

20

intends to admit evidence and/or testimony of the CI, the Commonwealth shall provide Walls with proper notice of that information.

## C. Jury Instructions and Defining Reasonable Doubt.

Walls claims that the jury instruction on trafficking in a controlled substance was erroneous, because the instruction allowed the jury to convict Walls of trafficking if it found he possessed a controlled substance with the intent to transfer the controlled substance to another. The Commonwealth concedes that a finding of guilt based on intent to *transfer* is not supported by statute. KRS 218A.1412. We agree; correct instructions should be submitted to the jury on remand. The same is true regarding Walls's alleged unanimity error. "[A]n instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof – violates the requirement of a unanimous verdict." *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013). When "the instruction does not specify which specific act it is meant to cover, we cannot be sure that the jurors were unanimous in concluding the defendant committed a single act satisfying the instruction." *Martin v. Commonwealth*, 456 S.W.3d 1, 7 (Ky. 2015). Because a criminal defendant can only be convicted by a unanimous verdict, *Miller v. Commonwealth*, 77 S.W.3d 566, 574 (Ky. 2002) (citing Ky. Const. § 7), the jury instructions on remand should comply with Section 7 of our Constitution.

During *voir dire*, the Commonwealth told the jury venire that it could not define reasonable doubt, but the prosecutor did provide an analogy.

21

I want to talk to you about reasonable and reasonable doubt, cause I think that's going to be talked about by the defense attorney. I can't define it for you, but I always like to tell the story and ask the question about the time when my granddaughter sent me a birthday card. She sent me a birthday card and she writes on it, "happy bithday" a typo. What was she trying to me? Oh come on. Happy birthday! Now, didn't have everything you needed to figure that out. You didn't have all the letters, but you figured it out. Do you have a reasonable doubt that she was trying to tell me happy birthday? Well, that's as tough as reasonable doubt is.

Again, this Court does not need to analyze whether the Commonwealth's analogous story violates our laws prohibiting attempts to define reasonable doubt. However, we do note and caution that the term "reasonable doubt" should not be defined. *Holbrook v. Commonwealth*, 525 S.W.3d 73, 89 (Ky. 2017) (citing *Smith v. Commonwealth*, 410 S.W.3d 160, 169 (Ky. 2013); *Commonwealth v. Callahan*, 675 S.W.2d 391, 393 (Ky. 1984); RCr 9.56). On remand, the Commonwealth should refrain from any attempts to define the term.

## D. Directed Verdict.

Walls's counsel moved for a directed verdict at the close of the Commonwealth's evidence; the trial court denied the motion. Walls asserts that he was entitled to a directed verdict and the jury should not have been instructed it could find him guilty of possession of a controlled substance. The Commonwealth counters that this argument should be disregarded because the jury was only instructed on the offense of trafficking. It appears the crux of Walls's argument is that the Commonwealth did not establish that Walls had actual or constructive possession of the heroin. We disagree.

22

"Possession of dangerous drugs . . . 'need not be exclusive' and may be held by more than one person." *Sevier v. Commonwealth*, 434 S.W.3d 443, 455 (Ky. 2014) (internal citations omitted); *see also Franklin v. Commonwealth*, 490 S.W.2d 148, 150 (Ky. 1972) ("Two or more persons may be in possession of the same drug at the same time and this possession does not necessarily have to be actual physical possession. It may be constructive as well as actual."). "In *Rupard v. Commonwealth*, 475 S.W.2d 473 (Ky. 1972), defendants were convicted of possession of marijuana with the intent to distribute or sell after it was determined that they had constructive possession of drugs stored in an abandoned farmhouse. . . . In *Leavell v. Commonwealth*, 737 S.W.2d 695 (Ky. 1987), a defendant who had the key to a vehicle's trunk wherein marijuana was later found was held to be in constructive possession of that drug." *Houston v. Commonwealth*, 975 S.W.2d 925, 927 (Ky. 1998).

The Commonwealth presented evidence through Jones's testimony that Walls gave her the heroin before he left the residence and told her to hide it like she had done before. Walls left the residence to go to the convenience store, and when he was searched, a key to the residence was found on Walls's person. It is the prerogative of the jury to judge Jones's credibility, *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991), and circumstantial evidence may form the basis for a conviction so long as the evidence is sufficient to convince a reasonable jury of guilt. *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky. 1994). The evidence was sufficient to reach the jury, and Walls was not entitled to a directed verdict.

23

## III. CONCLUSION

The best a court can do is to make the most reasoned and informed decisions in the heat of trial. We are cognizant of the difficulty faced by the trial court, especially with the Commonwealth's misrepresentations of its intention to use certain evidence and testimony. However, we must hold, for the foregoing reasons, the judgment of the Franklin Circuit Court is reversed and remanded for a new trial consistent with this opinion.

All sitting. Minton, C.J., Hughes, Keller, VanMeter, Venters and Wright, JJ. Concur. Cunningham, J., concurs in result only.

COUNSEL FOR APPELLANT:

Steven Goens
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Newberg, II
Assistant Attorney General