**Perry GRAVES, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**No.  2011–SC–000467–MR.**

Supreme Court of Kentucky.

Oct. 25, 2012.

Kathleen Kallaher Schmidt, Appeals Branch Manager, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffery Allan Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Perry Graves, appeals as a matter of right from a judgment entered upon a jury verdict by the Monroe Circuit Court convicting him of first degree trafficking in a controlled substance, second or subsequent offense, and sentencing him to twenty years imprisonment. On appeal, he asserts the following arguments: 1) the trial court erred during the guilt phase of his trial, by admitting evidence of other acts of drug trafficking; 2) the trial court deprived him of his right to trial by jury by not requiring the jury to decide if he should be sentenced as a first offender, or as a second or subsequent offender; and 3) the trial court erred by not sentencing him in accordance with KRS 218A.1412(3)(b), as amended in 2011.

We reverse the judgment of the Monroe Circuit Court and remand for a new trial because evidence alleging Appellant had committed other acts of drug trafficking was admitted in violation of KRE 404(b) and we cannot determine with fair assurance that the error did not substantially sway the verdict. We also address other

issues raised by Appellant insofar as they may recur upon retrial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Brett Page was a confidential informant working with Kentucky State Police detectives in Monroe County.[1] As relevant here, Page assisted the detectives with two drug deals targeting Appellant as a trafficker in cocaine. One deal occurred on April 22, 2008; the other deal occurred on May 14, 2008.

On each of the two occasions, Page and his girlfriend, Amanda Murphy, met the detectives at a location specified by the officers. The detectives searched Page and Murphy, as well as their automobile. They placed a hidden recording device on Page, gave him $200.00 in cash, and directed him to purchase ten rocks of cocaine from Appellant. With the detectives following, Page and Murphy drove to the mobile home of Appellant's sister, where Appellant was assumed to reside. The detectives waited at a nearby location from which they could observe the residence when Page went inside. Murphy remained in the car. No one during either transaction, except Page, saw Appellant because the inside of the residence was not visible to the outside observers.

Page testified that on both occasions, he met Appellant inside the residence and exchanged the $200 for ten rocks of cocaine. Page then immediately left the residence and returned with Murphy to the initial location. The detectives followed Page and Murphy and searched them again to retrieve the suspected cocaine and the recording device.

As it turned out, the recordings of the two transactions were of such poor quality that using them to identify Appellant as the person selling the drugs was impossible. The suspected cocaine was submitted to the state crime lab for identification. The crime lab confirmed that the substance procured by Page on both occasions contained cocaine and weighed 1.374 grams and 1.177 grams respectively.

Appellant was indicted for two counts of first degree trafficking in a controlled substance, second or subsequent offense. At the trial, however, the Commonwealth elected to prosecute Appellant only for the May transaction. The jury found Appellant guilty on that count of first degree trafficking in a controlled substance, second or subsequent offense. His sentence was fixed at imprisonment for twenty years and judgment was entered accordingly.

## II. THE TRIAL COURT IMPROPERLY ADMITTED EVIDENCE OF PRIOR ACTS OF DRUG DEALING

■ KRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible: (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Appellant contends that the trial court erred by admitting into evidence allegations from Page that Appellant had sold drugs on occasions other than the one being tried. We have consistently observed that KRE 404(b) is "exclusionary in

---

1. Page became a confidential informant after being charged with possession of cocaine. Due to working as a confidential informant, his charge was dismissed. Additionally, he received monetary compensation for every felony or misdemeanor case in which he assisted.

nature," and "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be 'closely watched and strictly enforced because of [its] dangerous quality and prejudicial consequences.'" *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky.2007) (quoting *O'Bryan v. Commonwealth,* 634 S.W.2d 153, 156 (Ky.1982)).

Appellant's argument is based upon the general prohibition of "other crimes" evidence as set forth in KRE 404(b). Specifically, he claims that the trial court erred by allowing the jury to hear evidence of the April transaction. We have recognized that "it would typically be improper for the Commonwealth or a testifying witness to refer to the undercover buys as Appellant was not being tried for such conduct." *Muncy v. Commonwealth,* 132 S.W.3d 845, 847 (Ky.2004).[2]

Appellant also contends that the trial court erred by allowing Page to testify that Appellant knew him because they had engaged in other illegal drug transactions. We address these two arguments in separate sections below.

**A. Evidence Regarding the April Transaction.**

Six days before the trial, and pursuant to KRE 404(c), the Commonwealth gave notice of its intent to introduce at trial evidence of the April drug deal set up by the detectives. The notice did not identify any specific purposes within the parameters of KRE 404(b)(1) that would allow admission of the evidence in exception to the general prohibition of KRE 404(b) against evidence of "other crimes."[3] Ap-

pellant objected to the admission of such evidence, and the matter was heard by the trial court before the trial.

At the pretrial hearing, the prosecutor said that because the April transaction was "almost identical" to the May transaction, it presented a "classic case" of other-crimes evidence that under KRE 404(b) is admissible as the method of operation, or *modus operandi,* to prove Appellant's identity. The trial court read aloud KRE 404(b), and then held that the evidence of the April drug deal was admissible because "intent and identity is always an issue" in a criminal case. The judge also recited the whole litany of 404(b)(1) exceptions, and then concluded that the April occurrence "was admissible to show intent, plan, knowledge, identity, and absence of mistake."

■ Despite that holding, neither the trial judge nor the prosecutor explained how the April transaction described by Page would be relevant to prove Appellant's intent, knowledge, plan, or absence of mistake. In its appellate brief, the only exception to KRE 404(b) argued by the Commonwealth is our common law *modus operandi* exception to prove identity. We therefore regard the other exceptions to KRE 404(b) cited by the trial court as abandoned. *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 815 (Ky.2004); *see also Yates v. Commonwealth,* 386 S.W.2d 450, 452 (Ky.1965) ("Appellant's other asserted grounds for relief may properly be considered as abandoned inasmuch as he does not press them in his brief.").

---

**2.** In *Muncy,* the evidence was deemed to be admissible, however, because the defendant had opened the door to its introduction when he denied any knowledge of the drugs.

**3.** KRE 404(b)(2) provides an additional exception to the general prohibition against ad-

mitting evidence of other crimes: if the other crime and the offense on trial are so "inextricably intertwined" that they cannot be separated without "serious adverse effect" upon the offering party. This exception was not put forth as applicable in this case.

At trial, Page and the detectives testified in detail about the April and May transactions. The jury also heard several non-testimonial references to the April transaction.[4] Appellant contends the evidence of the prior drug transaction falls outside of KRE 404(b) and is unduly prejudicial. The Commonwealth responds that the evidence of the April drug deal fits comfortably within KRE 404(b)(1) exception allowing proof of another crime that is so similar to the crime on trial that it tends to prove the identity of the perpetrator by establishing his *modus operandi.*

■■■■ We certainly agree with the legal principle relied upon by the Commonwealth. While evidence of prior crimes, wrongs, or acts is inadmissible to prove the propensity of an accused, such evidence may be admissible to prove the identity of a perpetrator when the evidence of other crimes indicates a *modus operandi. Woodlee v. Commonwealth,* 306 S.W.3d 461, 463 (Ky.2010); *Billings v. Commonwealth,* 843 S.W.2d 890, 893 (Ky.1992). "To indicate *modus operandi,* the two acts must show 'striking similarity' in factual details, such that 'if the act occurred, then the defendant almost certainly was the perpetrator[.]' That is, the facts underlying the prior bad act and the current offense must be 'simultaneously similar and so peculiar or distinct,' that they almost assuredly were committed by the same person." *Woodlee,* 306 S.W.3d at 464 (quoting *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky.2007)).

However, we disagree with the application of the principle by the trial court in this case. The Commonwealth's evidence of the April drug deal is, indeed, virtually identical to the evidence of the May drug deal. The prosecutor argued at the pretrial hearing, "The transactions are almost identical. Same defendant, same [confidential informant], same officers, same residence, same type of drugs purchased."

But, the similarities noted by the Commonwealth are not so peculiar or distinctive as to create a method of operation unique to *Appellant.* Rather, they seem to follow the same pattern of facts involved in any routine controlled drug buy arranged by police. In fact, the detective testified at trial, "We do [controlled drug buys] the same way every time." What is established by the evidence is *not* Appellant's *modus operandi;* rather, it is the *modus operandi* of the police unit involved in this investigation. The essential factors that make these two incidents similar were not shown to be the choice of Appellant. It was the detectives who on each occasion wired Page and sent him, along with Murphy, to the mobile home of Appellant's sister, with $200 in cash and instructions to buy ten rocks of cocaine. Therefore, the April drug deal does nothing to identify Appellant as the person inside the residence who conducted the May drug deal.

There is also another fundamental flaw in the Commonwealth's reasoning, and it arises from the fact that the only evidence that identified Appellant as the drug seller in *either* transaction was Page's testimony. No one else saw Appellant or could otherwise identify him as the drug seller. Evi-

---

4. The seven occasions on which the jury heard reference and evidence regarding the April transaction were: 1) the trial judge read the count of the indictment relating to the April transaction to the jury; 2) the Prosecutor mentioned the transaction during his opening and closing arguments; 3) Detective Decker testified about the transaction and identified the cocaine purchased during the drug deal; 4) a state crime lab technician testified about testing the procured cocaine; 5) Detective Murphy testified regarding the transaction; 6) Page also testified regarding the transaction and 7) the recording of the transaction was admitted into evidence and played for the jury.

dence of the April deal, to the extent it established a unique *modus operandi,* was relevant *only* if it tended "to make the existence of any fact that is of consequence to the determination of the action [here, the identity of the May drug seller] more probable or less probable than it would be without the evidence." KRE 401.

The relevance of *modus operandi* evidence is based upon the simple logical precept that begins with this premise: One can reasonably infer that two strikingly similar crimes were probably committed by the same person. That means that the identity of an unknown perpetrator can be inferred by the striking similarity between his crime and a different crime committed by a known perpetrator. Therefore, if we know the identity of the person who committed one of the crimes, we can infer that *that* person committed the other strikingly similar crime.

Here, the Commonwealth is not inferring the unknown event (that Appellant sold cocaine in May) from a known event (that Appellant sold cocaine in April.) The proof linking Appellant to the April crime is no better than the proof linking him to the crime on trial. In fact, it's the exact same evidence: Page's testimony. The only evidence identifying Appellant as the drug dealer in the April transaction is Page's testimony, which is the exact same evidence that identifies him in the May transaction. Page's testimony that Appellant sold cocaine in April, therefore, adds no credence to the accusation that Appellant also sold cocaine in May. With nothing more than Page to identify Appellant at either event, all that was presented to the jury was a pair of successive accusations, neither of which has any independent probative value that tends to prove the other. Multiple accusations by the same witness against an individual, generated under the same circumstances, do not establish a *modus operandi* that is relevant to prove that one of the accusations is true.

We therefore reject the Commonwealth's argument that Page's testimony that Appellant sold drugs in April is relevant to prove that Appellant committed the May offense. We do not suggest that to be relevant to prove identity under KRE 404(b), the Commonwealth must establish with certainty that the defendant on trial actually committed the "other crimes." Rather, we hold that, in the context of *modus operandi,* that multiple uncorroborated accusations of the same accuser, as here, have no independent probative value that would reasonably permit the inference that the perpetrator of one act also committed the other. Under such circumstance, the only relevance of the "other crimes" evidence is to suggest that the accused has the propensity to commit the offense under review. That of course, is the very thing that KRE 404(b) prohibits.

Therefore, we hold that the evidence regarding the April transaction did not fall within an exception to KRE 404(b) and was improperly admitted during trial. Having determined that error occurred, we must consider whether the error was harmless.

"A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky.2009). We cannot conclude with fair assurance that the verdict of the jury was not substantially swayed by the improper admission of "other crimes" evidence. Under KRE 404, the evidence of other crimes is presumptively prejudicial. When the punishment for an offense is enhanced be-

cause of a prior conviction, the prior conviction is deemed too prejudicial to be admitted into evidence during the guilt phase of the trial. *Commonwealth v. Ramsey,* 920 S.W.2d 526, 529 (Ky. 1996)("Due to the prejudicial effect, prior DUI convictions shall not be introduced during the prosecution's case-in-chief for a violation of KRS 189A.010(1)."); *Morgan v. Commonwealth,* 170 Ky. 400, 186 S.W. 132, 134 (1916) ("The evidence of the facts upon which the prior conviction was had should not be given in evidence upon the trial of an indictment for a subsequent offense.").

It would be ironic indeed if we should conclude that the prior conviction that enhanced Appellant's trafficking charge was too prejudicial to be introduced in the guilt phase of the trial, but the irrelevant and unproven charge of the April drug deal was not so prejudicial. Moreover, the prejudicial effect of that evidence was compounded by the numerous references to it throughout the trial, as noted above.

Upon this basis we reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

**B.  Page's Testimony**

■ Appellant further argues that the trial court erred by allowing Page to testify that he knew Appellant because, before becoming a confidential informant, he had purchased drugs from Appellant. Page testified, in pertinent part, as follows:

> Prosecutor:  Did [Appellant] know you?
>
> Page:  Yeah.
>
> Prosecutor:  Before these two incidents?
>
> Page:  Yes, Sir.
>
> Prosecutor:  How did he know you?
>
> Page:  I bought drugs from him.

Appellant's objection to this testimony was overruled and his motion for a mistrial was denied. The court found that Appel-

lant had opened the door to the improper evidence by questioning Page on whether anything in the audio recording of the transactions identified Appellant. The trial court also concluded that the objection was not timely made.

Upon review, we reject the trial court's analysis. Appellant's inquiry did not challenge Page's familiarity with him; it questioned whether the audio recording of the event captured any references to Appellant that would establish his identity or could otherwise confirm Page's accusation. This is not a line of inquiry that challenged Page's knowledge of Appellant and therefore it did not open the door for Page to claim that he knew Appellant because he had done other drug deals with him. Accordingly, the objection to the testimony should have been sustained. Furthermore, the trial court improperly denied the admonition Appellant requested directing the jury to disregard the comment.

Because we reverse upon other grounds, we need not consider whether this error alone warranted the extreme remedy of a mistrial. We conclude, however, that it did compound the prejudicial effect of the evidence of the April transaction.

**III.  APPELLANT WAIVED HIS RIGHT TO APPELLATE REVIEW OF THE PENALTY PHASE JURY INSTRUCTIONS**

■ Appellant next argues that the trial court erred in violation of his right to trial by jury by submitting jury instructions that did not permit the jury to make a finding on whether Appellant had a prior trafficking conviction. *See Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556, (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a

reasonable doubt. A defendant may not be expose[d] ... to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone."). Before instructing the jury, the trial court shared his proposed instructions with counsel.[5] Upon review of the proposed instruction, the prosecutor agreed with defense counsel that the instruction should be revised to require the jury to determine whether Appellant had a prior conviction for cocaine trafficking. The following conversation ensued:

> Trial Judge: Well if you [referring to Appellant's counsel] object we will let them decide simply on the instruction do you believe from the evidence you have heard that the defendant, Perry Graves, has been convicted of the previous offense of trafficking in a controlled substance by judgment dated ——. . . .
>
> Defense Counsel: I'll go with this instruction, Judge [referring to the proposed instruction].
>
> Trial Judge: You'll go with this one [referring to the proposed instruction]?
>
> Defense Counsel: Yes, if they, ah, down the road somebody says I'm wrong for doing it, then I guess I'm wrong.

The trial court then instructed the jury in accordance with the proposed instruction.

The Commonwealth argues that Appellant waived his claim of error on this issue and therefore it is not subject to appellate review. We agree. As the prosecutor at trial plainly indicated in the presence of defense counsel, the proposed instruction was defective. However, Appellant not only failed to preserve the error, he invited the error by affirmatively agreeing to the defective instruction. In *Quisenberry v. Commonwealth*, we examined the United States Supreme Court's distinction "between forfeited errors, which are subject to plain error review, and waived errors, which are not." 336 S.W.3d 19, 37–38 (Ky.2011) (citing *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). We recognized that "invited errors that amount to a waiver, *i.e.*, invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997). Appellant's counsel represented to the trial judge that he accepted the proposed penalty phase instruction despite the judge's willingness to revise the instruction to conform to Appellant's concern. In such circumstances, the right to appellate review of the claimed instructional error was relinquished. Nevertheless, since this case is being remanded, on other grounds, for a new trial, and upon retrial this issue may arise again, we will address it.

■ It is now well-settled that when the penalty for an offense may be enhanced because of a previous conviction, the existence of the prior conviction is a question of fact for the jury to decide during the penalty phase. *See Stewart v. Commonwealth*, 306 S.W.3d 502, 508 (Ky. 2010) ("When a prior misdemeanor conviction is used to enhance a subsequent of-

5. The jury instruction in question read as follows:

INSTRUCTION NO. 1
You have found the Defendant guilty under Count No. 1 of the Indictment of the offense of TRAFFICKING IN A CONTROLLED SUBSTANCE IN THE FIRST DEGREE, SECOND OFFENSE. This was enhanced to Trafficking in a Controlled Substance, 1st degree, Second Offense by virtue of the Defendant previously being convicted of Trafficking in a Controlled Substance, 1st Degree. You shall now fix his punishment for that offense at confinement in the penitentiary for not less than ten (10) years, nor more than twenty (20) years, in your discretion.

fense to a felony, as purportedly occurred here, the jury must make the finding with respect to the prior conviction during the penalty phase.").

▋ Generally, the existence of the prior conviction is incorporated into the penalty instruction so that the jury is directed to impose a sentence for the crime as a first offense, unless it also believes from the evidence beyond a reasonable doubt that the defendant has been previously convicted of a prior offense, in which case the jury is to fix the sentence in accordance with the elevated range of punishment. A good example of such an instruction may be found in WILLIAM S. COOPER, KENTUCKY INSTRUCTIONS TO JURIES, §§ 12.21–.22 (Donald P. Cetrulo ed., 5th ed.2012).[6] Upon retrial, assuming evidence of Appellant's prior convictions is introduced, the jury should be instructed accordingly.

## IV. SENTENCING CLASSIFICATION UNDER KRS 218A. 1412(3)(B)

In 2011, and before Appellant was sentenced, the crime of first degree trafficking in a controlled substance, second or subsequent offense, (KRS 218A.1412(3)(b)), was reduced from a class B offense to a class C offense, with a corresponding reduction in penalty. Appellant argues that, based upon KRS 446.110,[7] he should have been sentenced under the amended classification. The Commonwealth notes that Appellant waived the advantage of the amended law because he never consented to be sentenced in accordance with the 2011 amendment, as KRS 446.110 requires. Since we reverse the judgment on other grounds, this issue is moot. We presume that upon retrial, Appellant can address this issue should the need arise.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Monroe Circuit Court is reversed and remanded for a new trial consistent with this opinion.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCOTT, JJ., concur. SCHRODER, J., not sitting.

▋

---

6. For example, a penalty instruction, for a class D felony that is enhanced to a Class C felony, is provided in COOPER, KENTUCKY INSTRUCTIONS TO JURIES, § 12.22:

Instruction No. ____
You have found the defendant guilty [under Count of the Indictment] of the offense of ____ (ID offense). You shall now fix his punishment for that offense at confinement in the penitentiary for not less than one year, nor more than five years, in your discretion.
Instruction No. ____
If you believe from the evidence beyond a reasonable doubt that [prior to ____ (date)] the Defendant was previously convicted of ____ (ID offense) by final judgment of the ____ (ID court) entered on ____ (date–2), you shall not fix his punishment under Instruction No. ____, but shall fix his punishment under this Instruction at confinement in the penitentiary for not less than five years, nor more than 10 years [sic], in your discretion.

7. KRS 446.110 provides, "If any penalty, forfeiture or punishment is mitigated by any provision of the new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."