**Michael MORAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–CA–001493–MR.

Court of Appeals of Kentucky.

April 26, 2013.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, M. Brandon Roberts, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, NICKELL, and TAYLOR, Judges.

## OPINION

COMBS, Judge:

Michael Moran appealed his conviction of fourth-degree assault in the Lewis Circuit Court. The Commonwealth petitioned for and was granted discretionary review by the Supreme Court of Kentucky. On the original appeal, this Court vacated Moran's conviction. This case now comes to us on remand from the Supreme Court of Kentucky, which has directed us to examine the case anew in the light of its ruling in *Graves v. Commonwealth*, 384 S.W.3d 144 (Ky.2012), which was rendered six months after our decision. After our re-examination, we agree that our original disposition vacating and remanding now must be one affirming the Lewis Circuit Court.

Moran and the Commonwealth agree about the basic facts. In 2007, Moran and Amy Madden (now Amy Moran[1]) began dating while Amy was married to Howard Madden. Amy and Moran attended the same EMS (Emergency Medical Service) class at Shawnee State Community College.

On January 20, 2009, Madden dropped Amy off at the EMS class and picked her up after class. On his way home, Moran saw Madden and Amy sitting in her red Ford Escort in the parking lot of a bank. Moran pulled into the parking lot and parked next to the passenger side of the Escort where Amy sat.

Moran and the Commonwealth disagree about what happened next. Moran claims that he merely asked Amy to talk to him. She told him to meet her at her parents' house. Moran contends that Madden got out of the car and approached Moran's truck, cursing and challenging him to fight. Moran backed up his truck to leave, and when he pulled forward, he accidentally ran over Madden's leg.

Madden, however, claims that when he got out of the Escort, he calmly and politely approached Moran's truck. Madden believed that Moran intentionally struck him with the truck and that he would have

---

1. Amy and Madden separated in 2008. Amy and Moran married prior to the trial in 2010.

struck him again if Amy had not intervened.

The record shows that Madden spent approximately twenty days in the hospital recovering from the leg injury. Moran was charged with first-degree assault. Following a three-day jury trial in June 2010, Moran was convicted of assault in the fourth degree, a misdemeanor. He was sentenced to spend twelve months in jail. This appeal follows.

Moran's primary claim of error is that trial court erred when it allowed a jury instruction that permitted the jury to convict him of a crime without specifying the reason. He contends that the faulty instruction resulted in a verdict that was not unanimous. The instruction for assault in the fourth degree directed as follows:

If you do not find the Defendant Michael Moran guilty under Instruction No. 7 or Instruction No. 8, you will find the Defendant guilty of Fourth Degree Assault [sic] under this Instruction if, any [sic] only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 20, 2009 and within twelve months before the finding of the Indictment herein, he caused physical injury to Madden by striking him with his truck; AND

B. That in so doing: (1) The Defendant was acting intentionally; OR (2) The Defendant was acting wantonly; OR (3) The Defendant was acting recklessly and the truck was a dangerous instrument as defined under Instruction No. 3.

The instruction allowed the jury to find that Moran had acted intentionally, wantonly, *or* recklessly. *Intentional* behavior occurs when a person's "conscious objective is to cause [a] result or to engage in . . . conduct" defined by a statute. Kentucky Revised Statute[s] (KRS) 501.020(1).

KRS 501.020(3) defines *wantonly* as set forth below:

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

*Reckless behavior* occurs when a person "fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." KRS 501.020(4).

■ The right to a unanimous verdict in criminal cases is guaranteed by Section 7 of the Kentucky Constitution. Nonetheless, our Supreme Court has held that instructions with mixed states of mind—or *mens rea*—are appropriate *if* the evidence supports conviction under each theory. *Wells v. Commonwealth,* 561 S.W.2d 85, 88 (Ky.1978). Moran argues that there was not sufficient evidence to support the wanton and intentional instructions, resulting in a verdict that was not unanimous.

■ During deliberations, the jury sent a question to the court: "We the jury find the defendant guilty of fourth-degree assault. Is that specific enough?" The court, the Commonwealth, and Moran's attorney engaged in a lengthy discussion before the court sent an answer back to the jury. Moran's attorney was adamant that he did *not* believe that the jury needed to distinguish the specific state of mind

under which it believed Moran had acted. In fact, Moran's attorney actively assisted and participated in composing the court's answer to the jury: "if you are inclined to find under Instruction Number Nine, you are not required to be any more specific in your verdict form." Furthermore, Moran's attorney addressed the issue of appeal and said that he would not argue that the verdict was not unanimous if the jury did not specify the *mens rea* that it had applied.

In *Graves,* the Supreme Court addressed a similar situation and held:

> [the appellant] invited the error by affirmatively agreeing to the defective instruction.... [I]nvited errors that amount to a waiver, *i.e.,* invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review.

*Graves v. Commonwealth,* 384 S.W.3d at 152. (Citations omitted). Therefore, even if the instruction was erroneous and prevented Moran from receiving a unanimous verdict, *Graves* precludes further analysis due to his attorney's waiver of the argument. Moran cannot prevail under the clear and unequivocal reasoning of *Graves.*

Moran also argues that he was denied due process because the indictment was changed on the day of trial. The original indictment incorrectly recited that Madden had sustained a broken leg in the accident. However, Madden's injuries all related to soft tissue wounds. No fracturing occurred.

One of the elements necessary to prove an assault in the first degree is that the behavior caused serious physical injury. KRS 508.010. Moran's indictment erroneously cited a broken leg as the basis for this element. On the first day of trial, the Commonwealth made a motion to change the basis for serious physical injury from "broken leg" to "soft tissue damage." The court allowed the amendment in spite of Moran's objection.

■ We are not persuaded that harmful error occurred. The Commonwealth stated to the court that the grand jury did not hear any testimony about a broken leg. The broken leg was only mentioned in the indictment form and was a clerical error. There was enough evidence for the jury to find that Madden had sustained a serious physical injury. He was hospitalized for approximately twenty days and then had to use a walker for some time following the accident. He testified that he still has problems with the leg. The record shows that at one point, doctors warned Madden that the wound might require amputation of the leg.

■ The jury found that assault in the fourth degree had occurred. An element of that offense is that physical injury occurred—not the *serious* physical injury required for a conviction of assault in the first degree. KRS 508.030. The jury was never presented with any testimony or documents indicating that Madden suffered a broken leg. Therefore, we cannot conclude that Moran suffered any prejudice from the indictment.

In light of *Graves,* we affirm the judgment of the Lewis Circuit Court.

ALL CONCUR.