MODIFIED: OCTOBER 31, 2019
RENDERED: SEPTEMBER 26, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000393-MR

JASON RUDD           APPELLANT

ON APPEAL FROM LIVINGSTON CIRCUIT COURT

V.      HONORABLE CLARENCE A. WOODALL III, JUDGE

NO. 16-CR-00032

COMMONWEALTH OF KENTUCKY           APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

In April 2018, Jason Rafuss Rudd was convicted of first-degree sexual abuse and of being a first-degree persistent felony offender ("PFO1"). He was sentenced to twenty years' imprisonment. Rudd appeals as a matter of right[1] and raises two issues on appeal: (1) that he was denied a unanimous verdict because the jury was only instructed on one count of sexual abuse, when two separate allegations were introduced at trial, and (2) that he is entitled to a new trial because the jury pool was tainted and should have been excused. After an extensive review of the record, we affirm Rudd's conviction and sentence.

---

[1] Ky. Const. § 110(2)(b).

## I. Factual and Procedural Background.

Rudd and his ex-wife have four children together who visited Rudd every other weekend. In March 2016, Rudd's sixteen-year-old daughter, S.R., was at Rudd's residence, which Rudd shared with his parents and two brothers. While watching television, S.R. fell asleep in Rudd's bed wearing a t-shirt, underwear, and basketball shorts. Rudd returned home from work and got into his bed, fully dressed. At 4:00 a.m., S.R. felt Rudd's hands on her inner thigh and stomach. She then felt Rudd's penis against her as he thrusted his hips against hers and attempted to remove her shorts. Rudd then got up from bed and went to the bathroom. At approximately 6:00 a.m., Rudd started to touch S.R. again. Rudd became more aggressive and attempted to remove her shorts as he thrusted against her. S.R. rolled over when she thought she was "not going to be a virgin anymore." She then felt Rudd's "genitalia" touching her vaginal area. Eventually, Rudd got up again and went to the bathroom. S.R. got up and went to a different bathroom where she found a foreign fluid on the outside of her clothing and underwear. S.R. reported the abuse to her mother and step-father the following Monday.

Police interviewed Rudd one week later, and he admitted to sleeping in the same bed as S.R. that night, and claimed he may have had "wet dreams," but denied sexually abusing her. Rudd was indicted on one count of first-degree sexual abuse and of being a PFO1. In April 2018, Rudd was convicted and sentenced to twenty years' imprisonment. This appeal followed.

2

## II.  Rudd Waived any Unanimous Verdict Error.

Rudd argues that the jury instructions given at trial were duplicitous, in violation of the Kentucky Constitution's requirement of a unanimous verdict. Ky. Const. § 7.  The Commonwealth argues that Rudd waived this argument by submitting virtually identical jury instructions[2] to those he now cites as reversible error.  We agree.

Rudd was indicted on only one count of first-degree sexual abuse.  KRS[3] 510.110.  However, at trial, S.R. described two separate events that would constitute sexual abuse[4]—one occurring at 4:00 a.m. and another at 6:00 a.m.

---

[2] The only difference was that the final jury instruction included Rudd's full name instead of simply "Defendant."

[3] Kentucky Revised Statutes.

[4] The Commonwealth makes two arguments that the verdict was, in fact, unanimous.  First, the Commonwealth argues that the 4:00 a.m. incident where Rudd thrusted against S.R. and put his hand on her stomach did not constitute "sexual contact," as required by KRS 510.110.  Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]"  KRS 510.010(7).  In *Bills v. Commonwealth*, we held that "[s]exual contact is not limited to the sex organ[,]" "[a]n actual touching is required, but the contact need not be directly with the body[,]" and "[i]t was within the province of the jury to determine by method of reasonable inference whether the situation described here amounted to sexual contact."  851 S.W.2d 466, 471 (Ky. 1993).  Accordingly, the 4:00 a.m. incident met the definition of sexual contact.

The Commonwealth also argues that no unanimity issue exists because the abuse was one continuous criminal act by Rudd, not two separate incidents.  "[F]or multiple convictions to be proper there must have been a cognizable lapse in [the defendant's] course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts."  *Kiper v. Commonwealth*, 399 S.W.3d 736, 745 (Ky. 2012).  After the initial act of sexual abuse, Rudd left the bed and the second incident did not occur until two hours later.  Therefore, a lapse in Rudd's course of conduct occurred, and he had two hours to reflect upon his conduct before forming the intent to abuse S.R. a second time.  *See Ratliff v. Commonwealth*, 194 S.W.3d 258, 273 (Ky. 2006) ("One incident of applying a hot cigarette lighter to L.M.'s body created the prohibited result under KRS 508.100

The instruction given by the trial court stated, in relevant part:

> You will find the Defendant Jason R. Rudd guilty of First[-]Degree
> Sexual Abuse under this Instruction if, and only if, you believe
> from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about March 19, 2016, and before the
> finding of the Indictment herein:
>
> He subject S.R. to sexual contact[.]

Because Rudd neither objected to this instruction, nor raised a unanimity issue, he asks this Court to conduct palpable error review under RCr[5] 10.26. However, a difference exists between an unpreserved error and an invited error. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37–38 (Ky. 2011). In *Quisenberry*, we recognized that "invited errors that amount to a waiver, *i.e.*, invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* at 38 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997)).

In *Thornton v. Commonwealth*, this Court held that the appellant invited the jury instruction error he now complained of "by affirmatively proposing an instruction that contains the very defect he now opposes." 421 S.W.3d 372, 376 (Ky. 2013). We opined, "[b]ecause Appellant himself proposed the []

_____

(intentional infliction of abuse, *i.e.*, 'injury' under KRS 508.090(1)), and the subsequent act of re-applying the hot cigarette lighter to a different part of L.M.'s body constituted a second instance of conduct proscribed by KRS 508.100[]") (relying in part on *State v. Soonalole*, 992 P.2d 541, 543–44 (Wash. App. 2000) (holding two separate acts of fondling that occurred in the same car ride constituted two separate "units of prosecution")). Therefore, the two incidents to which S.R. testified were two separate acts of sexual abuse.

[5] Kentucky Rules of Criminal Procedure.

4

instruction, which was ultimately given, his right to appellate review of the claimed instructional error was relinquished." *Id.* at 377. In *Webster v. Commonwealth*, we extended the holding in *Thornton* to include—under the umbrella of invited errors—"instructions that are substantially similar to those ultimately given by the trial judge." 438 S.W.3d 321, 324 (Ky. 2014).

This case falls squarely in line with our jurisprudence on invited errors. *See Moran v. Commonwealth (Moran II)*, 399 S.W.3d 35, 38 (Ky. App. 2013).[6] Rudd proposed a jury instruction on first-degree sexual abuse virtually identical to the one given by the trial court. Rudd failed to object to the instruction, and instead objected to a lesser-included offense instruction, which was dropped from the final instruction. Therefore, Rudd "affirmatively propos[ed] [the] instruction that contain[ed] the very defect he now opposes[,]" and thus, invited the error. *Thornton*, 421 S.W.3d at 376–77. "Invited errors amount to a waiver and are not subject to appellate review." *Webster*, 438 S.W.3d at 324 (citing *Thornton*, 421 S.W.3d at 376–77).

### III. The Jury Pool was Not Tainted.

---

[6] The Court of Appeals initially vacated Moran's conviction based on a unanimity issue, and the Commonwealth appealed. *See generally Moran v. Commonwealth*, 2010-CA-001493-MR, 2012 WL 1365860 (Ky. App. Apr. 20, 2012). We remanded the case and directed the Court of Appeals to reconsider the decision in light of our ruling in *Graves v. Commonwealth*, 384 S.W.3d 144 (Ky. 2012)—our original decision holding errors in jury instructions can be waived as invited error. On remand, the Court of Appeals held that "even if the instruction was erroneous and prevented [the defendant] from receiving a unanimous verdict, *Graves* precludes further analysis due to [the defendant's] attorney's waiver of the argument." *Moran II*, 399 S.W.3d at 38.

5

The trial court's decision on whether an entire venire panel should be dismissed is reviewed for abuse of discretion. *King v. Commonwealth*, 374 S.W.3d 281, 288 (Ky. 2012). "Accordingly, this Court must determine if the trial court's ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Edmondson v. Commonwealth*, 526 S.W.3d 78, 83 (Ky. 2017). "The pertinent inquiry, [regarding prospective jurors], is whether it was reasonable for the trial court to find that [the jurors were] qualified to sit." *Maxie v. Commonwealth*, 82 S.W.3d 860, 862 (Ky. 2002).

Rudd argues that the jury pool was tainted due to a social media post by Deputy Ryan Burrow of a neighboring county sheriff's office. The post, more akin to a personal rant, was extremely negative of a Livingston County jury's decision—a jury made up of members of the same venire panel hearing Rudd's case—to acquit a defendant of criminal possession of a firearm a week earlier. The upshot of the rant was that the jurors had put a criminal "back on the street" and that the system failed "in spite of the hard work put in by law enforcement[.]" Fifty people had "liked" the post and nine had "shared" it by the time the post was brought to the attention of the trial court. The post also contained thirty-three comments, including comments from two members of the venire panel in support of the officer's sentiments.

Prior to trial, Rudd moved to dismiss the entire venire panel due to Dep. Burrow's social media post. The trial court denied the motion and elected to question individual members of the panel to determine the effect of the social media post. Roughly 25% of the venire panel acknowledged that they knew of

6

the social media post. The trial court, defense counsel, and the Commonwealth questioned each prospective juror at the bench, out of earshot of the rest of the venire panel. About halfway through the questioning, the court allowed the remaining venire panel members to go sit out in the courthouse hallway. These members included those who had not yet heard of the social media post and those who had knowledge of the post and had already been questioned by the trial court. The trial court did not admonish the panel members to not discuss the social media post while outside the courtroom. After the trial court finished questioning the prospective jurors— and striking a few for cause—it determined that the remaining jurors who had knowledge of the post seemed genuine when stating they could still be impartial and fair in determining the verdict of the case.[7]

A defendant has the burden to show "actual jury prejudice[.]" *St. Clair v. Commonwealth*, 140 S.W.3d 510, 532 (Ky. 2004) (citation omitted). We disagree with Rudd's assertion that the social media post affected the venire panel and prejudiced Rudd. The trial court, defense counsel, and the Commonwealth meticulously questioned each prospective juror who admitted knowledge of the social media post regarding what they knew and if it would

---

[7] Two individuals who admitted knowledge of the social media post sat on Rudd's final jury panel. One of those jurors indicated that he saw the post and thought it was disrespectful, but it would not impact him if chosen for the final panel. The other juror—who became the jury foreperson—indicated that she did not know about the post before being informed of its contents that same morning by another prospective juror. She stated that the post would not affect her ultimate decision. Further, no one who had commented online on the deputy's post ended up on the final jury panel.

7

affect the way they view the evidence and determine a verdict. The trial court struck for cause one of the prospective jurors who had commented online on the social media post and voiced support for the deputy. The other prospective juror who had commented on the post online supporting the deputy stated that she had changed her mind about the previous case's outcome once informed of its facts by another prospective juror. She also stated the post would not affect her ability to listen to the evidence. She was not *sua sponte* struck for cause by the trial court, and defense counsel made no request to strike, but she was not drawn for the final juror panel. The rest of the trial court's questioning continued in a similar manner, and every member of the venire panel who claimed knowledge of the social media post was questioned extensively. The prospective jurors' responses to questions regarding the influence of the social media post were in line with what one would expect from a reasonable juror. *See State v. Christensen*, 929 N.W.2d 646, 679 (Iowa 2019) ("Every reasonable juror knows that a wide variety of vacuous claims and statements may appear on social media without the slightest veracity[.]").

"The principal purpose of voir dire is to probe each prospective juror's state of mind and to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice." *Shegog v. Commonwealth*, 142 S.W.3d 101, 110 (Ky. 2004) (citation omitted). The trial court's actions reflected this principal purpose and no actual prejudice occurred based on Dep. Burrow's post.

In addition, Rudd argues that the trial court abused its discretion by failing to admonish the venire panel to not discuss the social media post when it directed them into the hallway for the remainder of individual questioning. RCr 9.70, the relevant rule, provides:

> The jurors, whether permitted to separate or kept in charge of officers, must be admonished by the court that it is their duty not to permit anyone to speak to, or communicate with, them on any subject connected with the trial, and that all attempts to do so should be immediately reported by them to the court, and that they should not converse among themselves on any subject connected with the trial, nor form, nor express any opinion thereon, until the cause be finally submitted to them. This admonition must be given or referred to by the court at each adjournment.

In *St. Clair*, we noted the difference between RCr 9.70's use of the term "juror" and RCr 9.36(2)'s use of the term "prospective juror." 140 S.W.3d at 532. We held that "trial courts have the discretion to admonish prospective jurors on these subjects early in the voir dire process, and we believe it would be the better practice to do so, [however,] RCr 9.70 requires this admonition only after the jury has been selected and sworn to try the case." *Id.* Until the jury is selected and sworn, each member of the venire panel remains a prospective juror and no admonition is required. *Id.* Accordingly, under the facts of this case, the trial court did not abuse its discretion.

## IV.    Conclusion.

For the foregoing reasons, this Court finds no reversible error in the issues brought before us. Rudd's conviction and sentence are affirmed.

All sitting. All concur.

9

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Newberg II
Assistant Attorney General

# Supreme Court of Kentucky

2018-SC-000393-MR

JASON RUDD                                                 APPELLANT

                  ON APPEAL FROM LIVINGSTON CIRCUIT COURT

V.                   HONORABLE CLARENCE A. WOODALL III, JUDGE

                               NO. 16-CR-00032

COMMONWEALTH OF KENTUCKY                       APPELLEE

## ORDER

The Opinion of the Court by Justice VanMeter rendered September 26, 2019, is corrected on its face by substitution of the attached opinion in lieu of the original opinion. Said correction does not affect the holding of the original Opinion of the Court. The correction is made only to reflect the incorrect cite error on page 3 of the opinion.

ENTERED: October 31, 2019

_____

CHIEF JUSTICE JOHN D. MINTON, JR.