# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JUNE 20,2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0397-MR

CEDRICK HALL                                                                    APPELLANT

V.
ON APPEAL FROM TAYLOR CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
NO. 23-CR-00268

COMMONWEALTH OF KENTUCKY                                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Cedrick Hall was convicted following a jury trial in Taylor Circuit Court of five counts of sodomy in the first degree.  He was sentenced to seventy years' imprisonment and now appeals as a matter of right.[1]  Upon a careful review, we affirm.

For several years, Hall lived at various locations in Taylor County, Kentucky, with his girlfriend and her children, including K.W.[2] who would become the target of Hall's sexual abuse.  These residences included locations situated on Carl Wilcher Lane, Birdie Avenue, Sharon Drive, and Soloma Drive,

---

[1] KY. CONST. §110(2)(b).

[2] We use initials to protect the privacy of the minor victim.  *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).  In a further effort to protect the minor victim, we will not use her mother's name in this Opinion but shall refer to her simply as "Mother" unless the context requires otherwise.

respectively.  Hall was frequently left to supervise the children as Mother worked outside the home, sometimes having multiple jobs simultaneously. Hall and Mother's approximately seventeen-year relationship was marred by physical violence.  Mother sustained "a lot of abuse" by Hall, many times while the children were in the house.  Due to the physical violence, Mother was blinded in one eye and had one of her teeth "knocked in."  K.W. did not escape Hall's violent tendencies and Mother's attempts to intervene were generally unsuccessful.  Hall struck K.W. so hard on one occasion that her glasses "flew across the room."  She was afraid of him because of the physical abuse.

Aside from the physical violence, Hall subjected K.W. to repeated sexual abuse.  In 2013, when K.W. was seven years old, Hall entered her bedroom at the Carl Wilcher Lane house in the middle of the day.  Mother was working and the other children were in another part of the house playing video games.  Hall told K.W. "not to say nothing" before pulling her pants down and anally raping[3] her.  After the rape, K.W. did not disclose the incident because she felt she would not be believed and if Hall found out she had talked about it she "would get [herself] hurt or [her] mom" because "that's just what he did was just abuse me and her."

---

[3] K.W. described the events as "rape" although Hall was not charged with such a crime.  Instead, he was charged with sodomy which requires proof of deviate sexual intercourse which is defined as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by any body part or a foreign object manipulated by another person." Kentucky Revised Statutes (KRS) 510.010(1).  Because K.W. used the term "rape" in her testimony, we shall do so as well unless the context requires otherwise.

K.W. was approximately ten or eleven years old when the family moved to Birdie Avenue.  At that residence, Hall entered her room at night while the rest of the family was sleeping and sodomized her.  K.W. indicated the anal rapes happened two to three times a week.  On one occasion, K.W. came inside the house to plug in her tablet while the others were in the backyard.  Hall followed her, closed the door behind him, and anally raped her in his room, the kitchen, and the living room.

After the family moved to Sharon Drive when K.W. was between eleven and thirteen years old, Hall's sexual abuse continued.  K.W. testified the rapes happened "a little less" during this time, going from three to four times a week to "a couple of times a week."  One particular day, Mother and the other children were outside and K.W. went to the kitchen for a glass of water.  Hall approached her from behind and anally raped her.  She was able to escape and fled to the basement where she believed her brother was, but Hall followed and sodomized her again.  Later that night, Hall anally raped her again in her bedroom.  On a different day, Mother was at work and Hall was ferrying the children to their grandmother's house one-by-one on his moped.  He told K.W. she would be the last to go.  When Hall returned from taking the last sibling to the grandmother's house, he told K.W. to go in the house, dragged her to her bedroom and put her on the bed.  He proceeded to take off both of their pants before sodomizing her.  K.W. was approximately twelve years old at the time of this attack.

A few years later, the family moved to Soloma Drive where K.W. shared a bedroom with one of her siblings. When the sibling was away from the house one day, Hall entered K.W.'s room, removed her pants, anally raped her, and walked out. He also inappropriately touched other areas of her body during the rape. According to K.W., during their time at Soloma Drive, Hall raped her "once a week, sometimes less" with the abuse occurring only during the day when her siblings were not at home. The abuse continued until K.W. was about fifteen years old in late 2019 when Hall and Mother separated. K.W. ultimately disclosed the sexual abuse to friends and family in the fall of 2023.

Hall was indicted on twenty-three counts of sodomy in the first degree, including ten counts each for events occurring on Birdie Avenue and Sharon Drive and three counts related to incidents at Soloma Drive, with one count of sexual abuse in the first degree, and being a persistent felony offender (PFO) in the first degree. Hall negotiated with the Commonwealth to reach a plea agreement, which the trial court rejected, noting "There are some cases in our system that are just meant to be tried, and this is one of them."

Shortly thereafter, the Commonwealth filed a notice pursuant to KRE[4] 404(c) of its intent to introduce evidence of Hall's other crimes, wrongs, or acts. Specifically, the Commonwealth indicated it would likely present evidence of Hall's physical abuse of K.W., Mother, and others in the household. The Commonwealth reasoned the evidence was relevant and necessary to the

---

[4] Kentucky Rules of Evidence.

4

requirement of forcible compulsion under the sodomy statutes and as a basis for K.W.'s delayed reporting of the sexual abuse. At a hearing on the motion, the Commonwealth reiterated its position, adding that the proffered testimony regarding physical abuse was inextricably intertwined with the sexual abuse allegations and provided context and a full presentation of the case to explain the delay in reporting was related to K.W.'s fear of Hall. Hall opposed the testimony, alleging the physical abuse allegations were irrelevant to the alleged instances of sexual abuse. He further contended the prejudicial effect of the proposed testimony outweighed any probative value and insisted it should be disallowed.

The trial court undertook the appropriate three-pronged analysis to determine whether to permit the proffered testimony: (1) relevance; (2) probativeness; and (3) prejudicial effect. It concluded evidence regarding physical abuse inflicted by Hall against K.W. and Mother satisfied all three prongs and permitted the Commonwealth to elicit such testimony. As to alleged abusive behavior toward the other siblings, however, the trial court found such testimony would serve only to bolster other evidence and was not permissible. Finally, the trial court noted it would give the jury a limiting instruction relative to the KRE 404(b) evidence and the limits of using such testimony during deliberations.

The matter was tried to a jury on June 10 and 11, 2024. At the close of the Commonwealth's case-in-chief, the trial court granted Hall's motion for a directed verdict on sixteen of the sodomy charges and the Commonwealth

5

dismissed the lone sexual abuse charge.  Hall presented no proof.  The trial court then conducted a conference regarding the instructions on the remaining seven counts of sodomy.  It noted the potential existed for a unanimous verdict issue based on K.W.'s description of multiple acts of sodomy happening over a span of multiple years and four different houses.  The trial court shared with both sides its proposed instructions which each included a date range, the location of the house and in which room or rooms the alleged crime took place, and some instructions included further specifics to differentiate the charges based on the testimony adduced at trial.  After stating it intended to present the Birdie Avenue sodomy counts under a forcible compulsion theory, Hall's counsel responded, "That's fine, Judge."  The trial court then indicated it would show the instructions were agreed upon.  The parties and the trial court then clarified that all of the counts would be presented under a forcible compulsion theory.  At the end of the discussions the trial court inquired if the parties were "good with the instructions then" to which defense counsel replied, "I think so."

The jury was given the case the following morning to begin its deliberations.  After sending several questions to the judge and being permitted to rewatch all of K.W.'s testimony, the jury returned guilty verdicts on five counts and not guilty verdicts on the remaining two counts.  The jury recommended a mix of concurrent and consecutive sentences aggregating to a total of seventy years' imprisonment.  The trial court imposed the recommended sentence and this appeal followed.

6

Hall raises two allegations of error in seeking reversal. He also contends that even if neither of the two errors alone warrant relief, their cumulative effect does, in fact, mandate reversal. We disagree.

First, Hall argues the trial court erred in permitting the Commonwealth to elicit testimony regarding physical abuse against K.W. and Mother. He believes this testimony ran afoul of the prohibition relative to other bad acts evidence contained in KRE 404(b). Hall contends the evidence was unduly prejudicial and the prejudice outweighed any potential relevance.

The general rule is well-established "that evidence of other crimes is not admissible to show that a defendant is a person of criminal disposition." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 333 (Ky. 2023) (citing KRE 404(a)). However, such evidence may be admissible when offered for a purpose other than criminal predisposition "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or . . . [i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(1)-(2). Because of the inherently prejudicial nature of this kind of evidence, KRE 404(b) has always been interpreted as being exclusionary in nature, and trial courts are expected to "apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994).

7

Trial courts are to assess the relevance, probativeness, and prejudice of the evidence of other crimes or wrongs when determining its admissibility. *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019). We review evidentiary rulings under KRE 404(b) for abuse of discretion. *Gasaway*, 671 S.W.3d at 331. An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, the Commonwealth sought to introduce evidence of Hall's violent tendencies to prove forcible compulsion and as a basis for explaining the delay in reporting the sexual abuse by the victim.

> This Court has long recognized that evidence of a defendant's prior threats, violence, and animosity against the victim of the charged offenses is "'almost always admissible,' under KRE 404(b), because it will almost always be significantly probative of a material issue aside from the defendant's character." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 458 (Ky. 2016) (quoting *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002)). Although this "does not mean, of course, that evidence of prior acts against the same victim is automatically admissible—relevance to a material issue and probativeness must be shown, and the possibility of undue prejudice must still be considered—but our experience with these cases has taught that in most of them the *Bell* inquiry leads to admission." *Jenkins*, 496 S.W.3d at 458.

*Lampkins v. Commonwealth*, 701 S.W.3d 99, 117 (Ky. 2024).

The testimony adduced at trial in this appeal satisfies all three of the foregoing prongs. It was relevant to show K.W. was aware of the violence which tended to show why she was hesitant to report the sexual abuses inflicted upon her. She testified she was fearful Hall would harm her or Mother should she

8

not capitulate to Hall's ongoing deviate sexual behavior. This testimony was necessary for the Commonwealth to give a full presentation of the case.

It further was relevant and necessary for the Commonwealth to prove the forcible compulsion element of the sodomy charges. "In determining whether the victim submitted because of an implied threat which placed her in fear, a subjective rather than an objective standard must be applied." *Yarnell v. Commonwealth,* 833 S.W.2d 834, 836 (Ky. 1992) (citing *Salsman v. Commonwealth,* 565 S.W.2d 638 (Ky. App. 1978)). K.W. plainly and unequivocally testified regarding her fear of retribution from Hall based on his pattern of abusing her and Mother, thereby serving to establish the forcible compulsion element of the sodomy offenses. Exclusion of the evidence would have had a "serious adverse effect" on the Commonwealth. KRE 404(b)(2).

Additionally, the testimony was probative to identify Hall as the perpetrator of both the physical and sexual abuse. Satisfaction of the probativeness prong is accomplished only when there is "evidence of the uncharged crime sufficiently probative of its commission by the accused to warrant its introduction into evidence." *Bell,* 875 S.W.2d at 890. Mother and K.W. each identified Hall as their abuser. And each was aware of the physical violence inflicted upon the other by Hall. Their testimony was sufficiently probative of Hall's prior acts of physical abuse to warrant admission.

Finally, while clearly prejudicial, the testimony was not unduly so, especially in light of the trial court's limiting instruction. That instruction informed the jury it could use the testimony relative to the physical abuse only

9

as it related to the Commonwealth's position regarding the delayed disclosure of the sexual abuse and as proof of the element of forcible compulsion. The limiting instruction reminded the jury Hall was only on trial for sexual offenses and that it was not to return a guilty verdict unless the Commonwealth proved beyond a reasonable doubt that Hall committed those crimes. A jury is presumed to "follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citing *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky. 1999)). An admonition is insufficient only

> (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial."

*Id.* Here, neither circumstance applies as nothing indicates the jury would be unable to follow the court's admonition and the evidence was not highly prejudicial or inflammatory. Additionally, defense counsel agreed the proposed limiting instruction was warranted and the language was appropriate. There was no undue prejudice.

Based on the foregoing analysis, we discern no abuse of discretion in the trial court's ruling relative to the KRE 404(b) evidence. It was relevant, probative, and not unduly prejudicial. Thus, this testimony was properly admitted.

10

Next, Hall argues the jury instructions violated his right to a unanimous verdict. Hall alleges K.W. testified in general terms that he sodomized her multiple times at each of the various houses and the instructions failed to include sufficient specificity to avoid a unanimity issue. He admits this argument is unpreserved and asks for palpable error review pursuant to RCr[5] 10.26.

However, as the Commonwealth correctly notes, Hall affirmatively waived any argument related to this issue before the trial court. Thus, Hall is precluded from raising the matter before this Court. "A defendant cannot complain on appeal of alleged errors invited or induced by himself[.]" *Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006) (quoting *United States v. Lewis*, 524 F.2d. 991, 992 (5th Cir. 1975)). "Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray*, 203 S.W.3d at 686). Otherwise, a party would be permitted "to take advantage of an error produced by his own act." *Wright v. Jackson*, 329 S.W.2d 560, 562 (Ky. 1959); *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) ("Challenges to such invited errors are forfeited.").

Kentucky law distinguishes "between forfeited errors, which are subject to plain error review, and waived errors, which are not[.]" *Quisenberry*, 336 S.W.3d at 38; *see also Gasaway,* 671 S.W.3d at 314. Invited errors constitute

---

[5] Kentucky Rules of Criminal Procedure.

a waiver and are defined as "invitations that reflect the party's knowing relinquishment of a right[.]" *Quisenberry*, 336 S.W.3d at 38 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997)). In other words, "the defendant cannot well complain of being prejudiced by a situation that he or she has created." 24 C.J.S. *Criminal Procedure & Rights of Accused* § 2548 (2024). Moreover, the invited error doctrine applies to defective jury instructions. *Graves v. Commonwealth*, 384 S.W.3d 144, 152 (Ky. 2012) (holding defendant's affirmative agreement to a defective instruction constituted invited error).

We note the present appeal does not involve the situation where the defendant's failure to object resulted from a lurking prejudicial error that escaped the notice of the parties and trial court. On the contrary, the trial court sought to ensure sufficient factual differentiation remained a primary consideration when the instructions were crafted. Here, the defendant invited or induced the alleged errors for which he now complains when he affirmatively waived any complaints relative to the court's proffered instructions. To hold otherwise in this appeal would contradict this Court's steadfast refusal to allow a defendant to inject reversible error into a proceeding by remaining idle in the face of unmistakable aggrievement. *See Crutcher v. Commonwealth*, 500 S.W.3d 811, 815 (Ky. 2016); *see also Merchant v. Ruhle*, 740 F.2d 86, 92 (1st Cir. 1984) ("To countenance a setting aside of the verdicts in this case would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy."). Under our precedents on invited error, Hall should not be heard to complain when the trial court specifically addressed the issue of

12

sufficient factual differentiation in crafting the instructions with Hall's input and without his objection.

In *Johnson v. Commonwealth*, 676 S.W.3d 405, 414-15 (Ky. 2023), we recently abandoned our minority position deeming this type of instructional error to be a structural error mandating reversal. Nevertheless, the task of crafting instructions on multiple charges remains "pregnant with possibilities for error[.]" *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460 (1978). Recognizing this risk, the trial court aptly brought the issue of sufficient factual differentiation to the attention of the parties. Hall had every opportunity to address this known issue, but he did not, and thus indicated his affirmative assent by conduct. Appellate courts should not encourage tactics which "allow a litigant to lead a trial court down a primrose path and later, on appeal, profit from the invited error." *United States v. Gates*, 709 F.3d 58, 63 (1st Cir. 2013).

Based on the foregoing analysis, the issue is therefore not properly before us, and we decline to review it. Because this error was invited, palpable error review under RCr 10.26 is not appropriate. *Mullins v. Commonwealth*, 350 S.W.3d 434, 439 (Ky. 2011).

Finally, Hall contends his convictions should be overturned due to cumulative error. Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error has been found "only where the individual errors were themselves substantial, bordering, at least, on the

13

prejudicial." *Id.* (citing *Funk v. Commonwealth*, 842 S.W.2d 476 (Ky. 1992)).

Further, "[w]here . . . none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)). As we have found no individual errors, there can be no cumulative error.

For the foregoing reasons, the judgment of the Taylor Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., concur. Goodwine, J., concurs in result only.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Sarah E. Benedict
Assistant Attorney General